GFI, INC., Plaintiff,

v.

FRANKLIN CORPORATION, Astro Lounger Furniture Manufacturing, Parkhill Furniture, Inc., and Washington Furniture Mfg, Defendants.

No. 3:97CV16–D–A.

United States District Court,
N.D. Mississippi,
Western Division.

March 2, 2000.

James J. Foster, Wolf, Greenfield & Sacks, Boston, MA, for GFI, Inc.

Claude F. Clayton, Jr., Mitchell, McNutt, Threadgill, Smith & Sams, Tupelo, MS, for Franklin Corporation and Washington Furniture Mfg.

Norwood Robinson, Robinson & Lawing, LLP, Winston–Salem, NC, for Franklin Corporation.

V. Bryan Medlock, Jr., Sidley & Austin, Dallas, TX, for Washington Furniture Mfg.

J. T. Martin, Washington, DC, for Parkhill Furniture.

## OPINION

DAVIDSON, District Judge.

GFI, Inc., owner of U.S. Patent No. 5,064,244 (the '244 patent), instituted this patent infringement action against Franklin Corporation, Astro Lounger Furniture Manufacturing, Washington Furniture Manufacturing and Parkhill Furniture, Inc. (Defendants). The Defendants raised the defenses of inequitable conduct, obviousness, patent misuse, equitable estoppel and laches; these defenses were tried to the court from November 15 to December 10, 1999.

Having carefully considered the testimony and exhibits presented at trial along with the parties' post-trial submissions, the court finds that the Defendants have proven by clear and convincing evidence that the Plaintiff obtained the '244 patent through inequitable conduct; for that reason, the court holds that the '244 patent is unenforceable. As to the remaining issues, the court finds that the Defendants have not proven by clear and convincing evidence that the '244 patent is invalid as obvious nor have the Defendants established the defenses of patent misuse, equitable estoppel or laches by a preponderance of the evidence.

Pursuant to Federal Rule of Civil Procedure 52(a), the court issues the following findings of fact and conclusions of law.

## Factual Background

GFI, Inc.(Plaintiff), formerly known as The Gentry Gallery, Inc., is a Mississippi corporation that manufactured and sold upholstered furniture in competition with the Defendants. The Gentry Gallery, Inc. was formed in the summer of 1985 by John Gentry, Glenn Terry and Billy Metts, all of whom were former employees of Benchcraft, Inc., another Mississippi furniture manufacturer. John Gentry was the President of The Gentry Gallery from its inception until 1991, when he left the company. Upon his departure, Glenn Terry was promoted to President from the position of Vice–President for Administration and Finance. Billy Metts served as Gentry Gallery's, and later GFI's, Vice–President for Manufacturing and Product Development. James Sproule, also a former employee of Benchcraft, joined Gentry Gallery in 1988 as a sales representative; later he became GFI's Vice–President for Sales and Marketing.

On January 3, 1991, the Plaintiff filed an application with the United States Patent and Trademark Office (PTO) for a patent on a sectional sofa in which a pair of reclining seats, on the same side of a wedge, are separated by a fixed console which contains the control means for operating the reclining seats.[1] The Plaintiff then, in order to expedite consideration of the '244 application, filed a "Petition to Make Special" with the PTO on February 26, 1991.[2] *See* Ex. P–2A, pp. 35–43. On

---

1. A sectional sofa is one that forms an L-shape. In such a sofa, the section that forms the vertex of the "L" is referred to as the wedge. Typically, the wedge is armless and forms a continuous seating surface with the pieces that abut it. According to the Plaintiff, because recliners usually had controls mounted on their arms or sides, sectional sofas were able to contain two recliners only if they were located at extreme ends of the sectional. Such an arrangement meant that the recliners faced in different directions. The '244 idea solved this supposed dilemma by mounting each recliner's controls on a console placed between the two recliners. This eliminated

the need to place the recliners at opposite ends of the sectional and allowed both recliners to face in the same direction.

2. Section 708.02 of the Manual of Patent Examining Procedure (M.P.E.P.) allows certain patent applicants to file a "Petition to Make Special" with the PTO and have their application advanced out of turn and receive expedited consideration. And, while the M.P.E.P. is not law, "it is entitled to judicial notice as an official interpretation of statutes or regulations as long as it is not in conflict therewith." *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1180 (Fed.Cir.1995).

May 2, 1991, the PTO, in a written memorandum, rejected the '244 application in its entirety. Then, on June 12, 1991, the Plaintiff met with the PTO's patent examiner to discuss the application. Finally, the PTO issued U.S. Patent No. 5,064,244 (the '244 patent) to the Plaintiff on November 12, 1991; James Sproule is the named inventor and the Plaintiff is listed as the patent's owner (assignee).[3] *See* Ex. P–1.

Before the end of 1991, the Plaintiff had already sued two of its competitors for allegedly infringing the '244 patent. Peoploungers, Inc. was sued in this District; litigation against the Berkline Corporation was underway in the District of Massachusetts. Also, the '244 patent played a role in *Durling v. Gentry Gallery, Inc.,* an action filed in this District in January 1992.[4] Noteworthy among these cases is the Berkline litigation, which reached the Federal Circuit. As part of its opinion in the Berkline case, the Federal Circuit held that twelve of the '244 patent's twenty-one claims were invalid.[5] *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1480 (Fed.Cir.1998). The remaining nine claims

3. Since June of 1995, GFI's patent counsel, the Boston law firm of Wolf, Greenfield and Sacks, has owned a one-third (33%) interest in the '244 patent and all revenue derived therefrom.

4. Cause No. 3:92cv009–S–O.

5. A claim is a statement in a patent which describes the novel features of the invention and defines the scope of the patent's protection. An issued patent, typically a document several pages in length, contains several parts including a cover page, a written description and one or more claims.

6. The broadest claim being asserted in this action is Claim 12 of the '244 patent, which covers a sectional sofa comprising:

a pair of reclining seats disposed in parallel relationship with one another in a double reclining seat sofa section, said double reclining seat sofa section being without an arm at one end whereby a second sofa section of the sectional sofa can be placed in abutting relationship with the end of the double reclining seat sofa section without an arm so as to form a continuation thereof,

(claims 9, 10, 12–15, and 19–21 of the '244 patent) are at issue in this lawsuit.[6]

The Plaintiff filed the current action on February 11, 1997, alleging infringement of the '244 patent. Each Defendant contends (i) that the '244 patent is unenforceable because the Plaintiff procured it through inequitable conduct, (ii) that the '244 patent is invalid for obviousness under 35 U.S.C. § 103, and (iii) that it has not infringed the '244 patent. Defendant Franklin also asserts the defenses of laches and equitable estoppel; Defendant Parkhill asserts the defense of patent misuse.

The defenses of inequitable conduct, obviousness, laches, equitable estoppel and patent misuse were tried to the court in a non-jury trial from November 15 to December 10, 1999. During the trial, the court heard testimony from twenty-nine witnesses and received two hundred fifty-nine exhibits into evidence.[7]

### Inequitable Conduct

■ Applicants for patents, including their patent attorneys, are required to prosecute patent applications in the PTO

each of said reclining seats having a backrest and seat cushion and movable between upright and reclined positions, said backrests and seat cushions of the pair of reclining seats lying in respective common planes when the seats are in the same positions,

a fixed console disposed in the double reclining seat sofa section between the pair of reclining seats and with the console and reclining seats together comprising a unitary structure, said console including an armrest portion for each of the reclining seats, said arm rests remaining fixed when the reclining seats move from one to another of their positions,

and a pair of control means, one for each reclining seat, mounted [on the console] and each readily accessible to an occupant of its respective reclining seat and when actuated causing the respective reclining seat to move from the upright to the reclined position.
(Ex. P–1, pp. 9–10).

7. Twenty of the witnesses who testified in this sixteen day trial did not testify in the five day *Berkline v. Gentry Gallery* trial.

with candor, good faith, and honesty. *Elk Corp. of Dallas v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 30 (Fed.Cir.1999); 37 C.F.R. § 1.56 (Rule 56). Specifically, applicants have a duty to disclose to the PTO information they are aware of that is material to the application.[8] 37 C.F.R. § 1.56(a). A person who obtains a patent after breaching this duty, by failing to disclose material information and intentionally misleading the PTO, has engaged in inequitable conduct and cannot enforce the inequitably acquired patent. *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed.Cir.1997); *General Electro Music Corp. v. Samick Music Corp.*, 19 F.3d 1405, 1408 (Fed.Cir.1994).

■ To prevail on their defense of inequitable conduct, the Defendants must prove by clear and convincing evidence that:

(1) the Plaintiff withheld material information from the PTO; and

(2) the information was withheld with an intent to deceive the PTO.

*Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed.Cir.1998). If both of the above elements are established clearly and convincingly, the court balances materiality and intent in light of all the circumstances and determines whether the Plaintiff's conduct was so culpable that the patent should be held unenforceable. *Baxter Int'l*, 149 F.3d at 1327.

■ For patents prosecuted before 1992, information is considered material when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent. *Id.; Akron Polymer Container*

*Corp. v. Exxel Container, Inc.*, 148 F.3d 1380, 1382 (Fed.Cir.1998). Material information is not limited to references that qualify as "prior art." *Akron Polymer*, 148 F.3d at 1382. Nor is it necessary that the patent would not have issued but for the omission or misrepresentation. *Molins PLC*, 48 F.3d at 1179–80; *Merck & Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1420 (Fed.Cir.1989). And if any uncertainty exists as to the materiality of a known reference, the applicant has a duty to disclose the reference to the PTO. *See Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257 (Fed. Cir.1997) ("[I]t is axiomatic that close cases should be resolved by disclosure, not unilaterally by applicants."). Likewise, if the applicant is aware of facts indicating a reasonable possibility of the existence of material information, the applicant is under a duty of reasonable inquiry to ascertain such information and disclose it to the PTO. M.P.E.P. § 2001.02.

■ An applicant need not, however, cite an otherwise material reference to the PTO if that reference is merely cumulative of or less material than other references already before the PTO. *Baxter Int'l*, 149 F.3d at 1328; *see Regents of University of California v. Eli Lilly and Co.*, 119 F.3d 1559, 43 U.S.P.Q.2d 1398, 1411 (Fed.Cir. 1997) (holding that cumulative information is not material). In addition, it is of no moment how and when a reference came to the attention of the PTO, as long as the reference was before the PTO during the pendency of the application. *Molins PLC*, 48 F.3d at 1185; *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed.Cir.1991). In other words,

---

8. The duty of candor and good faith rests on the inventor, on each attorney or agent who prepares or prosecutes the application, and on every other individual who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor or the assignee. 37 C.F.R. § 1.56 (1990). In this case, James Sproule, Glenn Terry and George Greenfield, *inter alia*, were bound by the Rule 56 duty of candor and good faith. The court also notes that, prior to

the June 1991 interview at the PTO, the contact Mr. Greenfield had with Sproule and Terry was limited to telephone conversations and written correspondence. So, while Mr. Greenfield was certainly bound by Rule 56, his communication with Sproule and Terry prior to the filing of the '244 application was somewhat limited, requiring him to rely heavily on their veracity and compliance with the duty of candor and good faith.

if the information was actually before the PTO while the application was pending, then that information cannot be deemed to have been "withheld" from the PTO. *Scripps,* 927 F.2d at 1582.

As for the second element of the test for inequitable conduct—intent to deceive the PTO—the Defendants must present clear and convincing evidence that the Plaintiff intended to deceive the PTO. *Modine Mfg. Co. v. Allen Group, Inc.,* 917 F.2d 538, 541 (Fed.Cir.1990). And, although materiality and intent are distinct elements that are individually analyzed, an omitted reference's level of materiality affects the court's analysis regarding the Plaintiff's intent in withholding that reference. Omitted references that are highly material require a lower level of intent to establish inequitable conduct, and vice versa. *Critikon,* 120 F.3d at 1256.

Because direct evidence of deceptive intent is so rarely available, intent must generally be inferred from the facts and circumstances surrounding the applicant's overall conduct, with any evidence indicative of good faith also taken into account. *Baxter Int'l,* 149 F.3d at 1329. The requisite deceptive intent may be inferred where a patent applicant knew, or should have known, that the withheld information would be material to the PTO's consideration of the patent application. *Critikon,* 120 F.3d at 1256.

Gross negligence alone in failing to disclose material references, however, is insufficient to justify an inference of intent to deceive the PTO; clear and convincing evidence that the applicant made a deliberate decision to withhold a known material reference is required. *Baxter Int'l,* 149 F.3d at 1329. Also, the Plaintiff can rebut evidence of inequitable conduct by showing that any nondisclosed references were not material, that the Plaintiff was not aware of the nondisclosed references, that the Plaintiff did not know that the references were material or that the Plaintiff's failure to disclose the references did not result from an intent to mislead the PTO. *Elk Corp. of Dallas,* 168 F.3d at 30.

In the case *sub judice,* the court finds that the Plaintiff's failure to disclose the following material references to the PTO, coupled with the requisite intent to deceive, constituted inequitable conduct:

(1) United States Patent No. 4,668,009 (the Talley Patent) (Ex. D–36);

(2) Walter E. Durling's pending patent application (filed November 5, 1990; issued as United States Patent No. 5,106,153 on April 21, 1992) (the Durling patent application) (Ex. D–31) and the existence of the piece of furniture claimed by Durling in that patent application as seen by the Plaintiff prior to its filing of the'244 application (the Durling Furniture) (Ex. D–13);

(3) a furniture group manufactured in 1989 by Kanowsky Furniture featuring a one-armed recliner, a console and an armless chair on one side of a wedge (the Kanowsky furniture) (Ex. D–42);

(4) a sofa manufactured in 1990 by Major Motion Furniture Company, containing side-by-side recliners separated by a fixed console and operated by arm-mounted pushbutton control mechanisms (the Major Motion furniture) (Ex. D–9); and

(5) a modular furniture arrangement manufactured by Benchcraft Furniture Company in 1985 and consisting of two handle-operated recliners separated by a matching table (the Ducks furniture) (Ex. D–141).

While the court finds that the Plaintiff's omission of the foregoing references constituted inequitable conduct, the court notes that the Plaintiff disclosed the following references to the PTO:

(1) Sectional sofas having recliners at extreme ends (as illustrated by Figure 5 of United States Patent No. 4,740,031—the "Rogers" patent) but not containing a console (*See* Ex. D–72);

(2) mechanisms, such as one manufactured by Super Sagless Corporation,

which allow for flexibility regarding the location of a recliner's controls when that recliner is part of a sofa arrangement; and

(3) reclining sofas and loveseats (i.e., sofas and loveseats wherein one or more of the seats are recliners).

### A. The Talley Patent

In May 1987, Schnadig Corporation, through its assignor Thomas Talley, obtained United States Patent No. 4,668,009 (the Talley chair). See Ex. D–36. The Talley chair is an armless reclining chair that is activated by a recessed pushbutton control mounted on the side rail, beneath the seat cushion. This chair is physically identical, in all pertinent respects, to the inside recliner utilized in the '244 patent save one feature—location of the control mechanism. On the '244 patent, the inside recliner's control mechanism is mounted on the adjacent console; on the Talley chair, the recliner's control mechanism is located on top of the chair's side rail, beneath the seat cushion.

 The Talley chair was clearly a material reference that should have been disclosed to the PTO during the pendency of the '244 patent application.[9] The striking similarity between the Talley chair and the inside recliner utilized in the '244 product leaves no room for doubt—a reasonable patent examiner would have considered the Talley chair a critically important reference in deciding whether to allow the '244 patent to issue. The Talley chair

was material because it embodies one of the key elements that made up the '244 idea—an armless recliner. The fact that it was not part of a sectional arrangement with a console is of little consequence; a single reference need not anticipate all, or even any, of a purported invention's claims to be deemed material.

In light of these facts, the court finds that the Talley chair was highly material to the Plaintiff's '244 patent application. The only way the Talley chair could have been more material was if it were identical to the '244 patent's inside recliner.[10] Simply because a reference lacks one or more of the elements present in the patented item does not make it likely that a reasonable examiner would have considered the reference unimportant in deciding whether to allow the patent. A reference's materiality is judged based upon the overall degree of similarity between the omitted reference and the claimed invention in light of the other references before the PTO. Baxter, 149 F.3d at 1328.

Turning to the intent prong of the test, there is no doubt that the Plaintiff was aware of the Talley chair and its materiality to the '244 application. In August of 1987, Mr. George Greenfield, the Plaintiff's patent attorney, disclosed the Talley chair to the PTO as a reference in a patent application he prepared for another client.[11] And, as a highly experienced patent attorney, Mr. Greenfield knew, or should have known, that the Talley chair was highly material to the PTO's consideration of the '244 patent application.

9. Indeed, the Plaintiff, in its post-trial submission, admits that the Talley patent qualifies as "uncontested prior art" and was thus material. Plaintiff's Proposed Findings of Fact, pp. 21–22.

10. The court is aware that the Plaintiff was attempting to patent an entire sectional sofa and not solely the inner recliner element of its sofa. As the Plaintiff has repeatedly stated, however, one of the critical elements of the '244 patent is the inside armless recliner. Therefore, the existence of the Talley armless reclining chair, particularly in light of other material references such as the Kanowsky

furniture, would have weighed significantly in a reasonable patent examiner's analysis regarding the merits of the '244 patent application.

11. Citing a reference in one patent application in no way lessens an applicant's subsequent duty to redisclose the reference in a later application. See M.P.E.P. § 2001.06(b) ("[P]rior art references from one application must be made of record in another subsequent application if such prior art references are material to the patentability of the subsequent application.").

In light of all the surrounding circumstances, including the Talley chair's high level of materiality, Mr. Greenfield's level of experience and familiarity with the Talley chair, and the absence of any evidence of good faith, the court finds that the Plaintiff's undisputed failure to disclose the Talley chair was clearly and convincingly a deliberate attempt to mislead the PTO. The Plaintiff has offered no evidence tending to rebut this conclusion, and no other outcome is plausible based on the evidence presented to the court. Nothing in the record indicates that this glaring omission was the result of oversight or gross negligence. Notwithstanding the inherent competitive pressures of the business world and the natural desire to vanquish one's competitors, patent applicants are under a duty of candor to disclose all material references to the PTO, even when embroiled in a race to be the first to secure a patent on an item. Attempting to gain an advantage over one's business adversaries by unilaterally deciding that known material references do not have to be disclosed to the PTO during the pendency of a patent application is improper. *Critikon*, 120 F.3d at 1257.

Now that the two required elements of inequitable conduct have been proven, the court must conduct a balancing test and determine, in light of all the circumstances, whether the Plaintiff's conduct was so culpable that the '244 patent should be held unenforceable. In balancing the evidence, the court notes that the Talley chair possessed the highest degree of materiality. The Plaintiff was aware of the Talley chair and its attributes yet did not disclose it to the PTO; no credible good faith reason for this omission was offered. Moreover, Mr. Greenfield testified that he understood the difference between a material reference and a reference which qualifies as prior art and his understanding of the rule that all material references must be disclosed to the PTO.

On that note, the court wishes to make clear that materiality, by its very definition, encompasses references that may not qualify, in a given situation, as prior art. The difference between materiality and prior art is hardly esoteric in light of the rule requiring patent applicants to disclose, except as previously noted, all material references to the PTO, whether those references qualify as statutory prior art or not. Failure to disclose all material references can result in a finding of inequitable conduct and an unenforceable patent. *Baxter Int'l*, 149 F.3d at 1327. Applicants are not to unilaterally decide, in close cases, the materiality of a reference; it is the PTO's duty, after the applicant has made all necessary disclosures, to determine if the purported invention is patentable. *Critikon*, 120 F.3d at 1257.

In short, in light of all the circumstances and surrounding facts including the demeanor and credibility of the witnesses that testified during this trial, the court, in balancing the evidence, finds that the Plaintiff engaged in inequitable conduct during the prosecution of the '244 patent by withholding the Talley patent. The Defendants have presented clear and convincing evidence that leads to this conclusion and the '244 patent is rendered unenforceable as a result of the Plaintiff's conduct.

### B. The Durling Furniture and Patent Application

While the Plaintiff's nondisclosure of the Talley patent is sufficient in itself to render the '244 patent unenforceable, the court finds that the Plaintiff also committed inequitable conduct by failing to disclose the Durling patent application and Durling furniture to the PTO.

In 1990, Walter Durling, a furniture designer from Tupelo, Mississippi, designed and built a loveseat-like unit consisting of two recliners joined by a middle console. *See* Ex. D–13. He filed a patent application with the PTO on November 5, 1990, two months prior to the Plaintiff's filing of the '244 application.[12] While Durling's

12. Durling's application was approved and he was awarded U.S. Patent No. 5,106,153 on

patent application did not specify a location for the recliner controls, the Plaintiff undisputedly saw a model of the Durling furniture in late October or early November of 1990, prior to the filing dates of both the Durling and '244 patent applications, that had console mounted recliner controls. Additionally, prior to the '244 filing the Plaintiff was aware of, and possessed a copy of, the Durling patent application. Therefore, in order to comply with the duty of candor, the Plaintiff should have made the PTO aware of both Durling's patent application and the fact that the Plaintiff had seen the Durling furniture with console mounted controls. Both were material to the '244 application. The Plaintiff admitted that it did not, however, disclose the Durling application or the Durling furniture to the PTO during the pendency of the '244 patent application.

The Durling references were highly material to several claims of the '244 application, including Claim 12, primarily due to Durling's controls being located on the console. None of the references the Plaintiff disclosed to the PTO indicated console mounted recliner controls. While the Plaintiff did disclose a mechanism which allowed controls to be console mounted, the Durling reference was more material and was non-cumulative because it demonstrated an actual application wherein the recliner controls were console mounted.

April 21, 1992. *See* Ex. D–31.

13. This duty extends beyond an applicant simply telling the PTO about material information in other pending patent applications that the applicant himself has filed; applicants have an overriding duty to disclose "all material information they are aware of regardless of the source or how they become aware of the information." M.P.E.P. § 2001.06.

14. These negotiations sprang from a confrontation between Durling and the Plaintiff at the October 1990 furniture market in High Point, North Carolina. On October 17, 1990, Durling visited the Plaintiff's showroom at the furniture market. When he saw the '244 arrangement the Plaintiff had on display, Durling became irate and accused the Plaintiff of stealing his idea. This led to an immediate meeting at a nearby hotel between Durling, Gentry, Sproule and Terry. During this

As for the co-pending Durling patent application, the Federal Circuit has made clear that information in co-pending patent applications must be disclosed if it is material. *See Molins PLC,* 48 F.3d at 1185 (holding that duty to disclose material information includes "duty to bring to the attention of the examiner ... information within [applicant's] knowledge as to other co-pending United States applications which are 'material to the examination' of the application in question."(quoting M.P.E.P. § 2001.06(b))).[13]

Now that the court has determined that the material Durling references were withheld from the PTO, the question is whether the Plaintiff withheld those references with the intent to deceive the PTO. No direct evidence proving that the Plaintiff withheld the Durling references with deceptive intent exists. But the fact that the Durling references possessed a high level of materiality, coupled with the Plaintiff's admitted knowledge of those references and failure to disclose them, leads the court to necessarily infer that the Plaintiff withheld the references with the intent to deceive the PTO. The Plaintiff obviously recognized the materiality of the Durling furniture as evidenced by the fact that the Plaintiff entered into frantic and heated negotiations with Durling and his patent attorney concerning the Durling furniture.[14]

meeting, Durling provided the Plaintiff with three sketches of the furniture arrangement he had designed. The Plaintiff agreed to pay Durling a royalty in exchange for the right to build the furniture. A written agreement was signed by both parties and Durling's sketches were attached to the agreement. *See* Ex. D–5. Negotiations then commenced between the Plaintiff's patent counsel, Mr. Greenfield, and Durling's patent attorney, Ted Hunt. These negotiations primarily revolved around determining whether Durling or the Plaintiff had an earlier date of invention; additionally, the Plaintiff was provided a copy of the Durling patent application, which had been filed on November 5, 1990. The Plaintiff proceeded to file its '244 patent application on January 3, 1991, and never mentioned any of these events to the PTO.

Moreover, in light of the negotiations the Plaintiff and Durling were embroiled in shortly before the filing of the '244 application, the Plaintiff's failure to disclose the references certainly was not the result of gross negligence or oversight. Just as with the Talley patent, at the very least the Plaintiff knew that the Durling references were potentially material to the '244 application; the settled Federal Circuit rule in such cases is that an applicant must disclose such references to the PTO. *Critikon, Inc.*, 120 F.3d at 1257. At a minimum, the Plaintiff should have alerted the PTO of the existence of the Durling situation. In light of these facts, the court finds by clear and convincing evidence that the Plaintiff intentionally withheld the Durling references with the intent to deceive the PTO.

As for the court's weighing of materiality and intent, the court finds that, in light of all the above circumstances, the Plaintiff's conduct was so culpable in withholding the Durling references that the '244 patent should be held unenforceable.

### C. The Kanowsky Furniture

In the late 1980's, Kanowsky Furniture manufactured a modular sectional furniture group that featured a recliner, a console and an armless chair on one side of a wedge. *See* Ex. D–42.

The Kanowsky furniture was material to the '244 application because it demonstrates the placement of a console between two seats on one side of a wedge in a modular sectional arrangement.[15] The PTO should have been made aware of the Kanowsky furniture because a reasonable patent examiner would consider it important in determining the patentability of the '244 idea. The Plaintiff, however, did not disclose the Kanowsky reference to the PTO.

The Kanowsky reference is of crucial importance because none of the references the Plaintiff disclosed to the PTO showed the use of a console between two seats on

one side of a wedge; the disclosed references simply showed, at best, L-shaped sofas with recliners at each extreme end. Along with the Talley armless recliner and the Durling console-mounted recliner controls, the Plaintiff's withholding of the Kanowsky reference meant that the PTO lacked information concerning the most basic elements of the '244 idea. None of the references the Plaintiff disclosed to the PTO were as material as the Kanowsky furniture, and the Kanowsky reference was not cumulative of any disclosed references.

The Plaintiff argues that, while it knew of the Kanowsky furniture, it was unaware of its materiality. This argument fails, however, in light of the fact that the Plaintiff disclosed numerous references that were less material than the Kanowsky furniture. For example, the Plaintiff disclosed reclining sofa and loveseat references to the PTO as well as modular sectional arrangements—but none of these contained a console between two seats on the same side of a wedge.

The Plaintiff's failure to disclose the Kanowsky reference is particularly disturbing when considered in light of the surrounding circumstances. The Plaintiff was all too willing to disclose references which did not contain the crucial elements of the '244 patent, but claims not to have realized the materiality of the references, such as Kanowsky, which did contain those crucial elements. If the Plaintiff withheld the most material references, such as Kanowsky, due to "not realizing that those references were material," for what reason did the Plaintiff feel compelled to disclose references which were clearly even less material?

As is the case with the Talley and Durling references, the fact that the Plaintiff knew of the Kanowsky reference's high level of materiality, yet withheld the information, leads the court to infer that the

---

15. Indeed, the Plaintiff, in its post-trial submission, admits that the Kanowsky furniture qualifies as "uncontested prior art" and was thus material. Plaintiff's Proposed Findings of Fact, p. 21.

Plaintiff possessed the intent to deceive the PTO. And, as with the other withheld references, this omission was not the result of gross negligence or oversight nor was it done in good faith. In light of all the circumstances and surrounding facts, the court finds that the Plaintiff's conduct in this regard was so culpable that the '244 patent should be held unenforceable.

### D. The Major Motion Furniture

In 1990, Major Motion Furniture Company developed and displayed a furniture arrangement that contained side-by-side recliners separated by a fixed console and operated by arm-mounted pushbutton control mechanisms. *See* Ex. D–9.

The Plaintiff admits knowing of the Major Motion furniture prior to the filing of the '244 patent application. And it is clear that the Major Motion furniture was highly material to the '244 application due to Major Motion's incorporation of a fixed console between two reclining chairs. The use of a fixed console is one of the elements that the Plaintiff trumpets as being a key ingredient of the '244 invention's originality. Because the Major Motion furniture contained such a console, a reasonable patent examiner would have considered it important in connection with the '244 patent application.

The Plaintiff claims that the Major Motion reference was not material because it was a stand-alone sofa rather than a sectional. The court disagrees. References need not be anticipatory, nor nearly so, in order to be material. Moreover, the Plaintiff disclosed examples of far less material references to the PTO. The Major Motion furniture's use of a fixed console rendered it far more material to the '244 patent application than were the disclosed dual reclining sofas without a console. The Plaintiff seems to argue that there were simply no references at all that were material to the '244 idea because no one had built an arrangement that mirrored the '244 idea. Materiality is not such a narrowly defined concept. A reasonable patent examiner would have considered the Major Motion reference important to

the patentability of the '244 idea. That the Major Motion reference was not dispositive on the '244 idea's patentability in no way suggests that it was not material. *See Critikon,* 120 F.3d at 1257; *Molins PLC,* 48 F.3d at 1179–80; *Merck & Co.,* 873 F.2d at 1420.

Also at issue is whether the Plaintiff withheld the Major Motion reference from the PTO. The Plaintiff claims that the Major Motion reference was disclosed to the PTO during the June 12, 1991, interview conducted by the PTO's patent examiner and attended by Sproule and Mr. Greenfield.

The court finds that the Defendants have shown by clear and convincing evidence that the Major Motion reference was not disclosed to the PTO, during the interview or otherwise. The patent examiner prepared an "Examiner Interview Summary Record" memorializing the events that transpired during the interview. *See* Ex. P–2A, p. 69. Among the entries are the names of those attending the interview and the date the interview took place. Additionally, the examiner noted that "photos of the instant invention [i.e., the '244 idea] were shown." In the section entitled "[i]dentification of prior art discussed," however, the examiner wrote "NA." Then, two weeks after the interview, the Plaintiff sent the PTO a confirmation document, entitled an Amendment, in which the Plaintiff, *inter alia,* sought to confirm the events that transpired at the interview. *See* Ex. P–2A, pp. 55–66. In this document, the only references the Plaintiff alleges were discussed with the examiner are sectional sofas with reclining chairs at extreme ends and reclining sofas and loveseats, arrangements the court has already credited the Plaintiff with disclosing. *See* Ex. P–2A, p. 61.

The court finds that the patent examiner's Summary Record, combined with the Plaintiff's Amendment, indicate clearly and convincingly that the Plaintiff simply showed the examiner photos of the '244 furniture while orally describing the man-

ner in which the '244 idea is distinguishable from sectional sofas having recliners at extreme ends and from reclining sofas and loveseats, none of which utilized a console. Clearly, no other material references were disclosed at the interview; otherwise, either Mr. Greenfield or the examiner would have denoted those references in their respective versions of what transpired during the interview.

As such, the court finds that the Major Motion reference was material and was withheld from the PTO. As to intent, it is clear that the Plaintiff was aware of the Major Motion furniture and its materiality to the '244 application. And, as with the previously discussed references, the high degree of materiality possessed by the Major Motion furniture, combined with the fact that the Plaintiff was careful to disclose only those references not containing crucial elements of the '244 invention, leads the court to conclude that the Plaintiff's failure to disclose the Major Motion reference was a deliberate attempt to mislead the PTO. The Plaintiff went out of its way to disclose less material references but made a concerted effort to keep the most material items from being presented to the PTO. Such behavior was not the result of oversight or gross negligence.

In balancing the evidence, the court concludes that the Plaintiff's conduct as to the Major Motion reference was so culpable that the '244 patent should be held unenforceable. The court is led to this conclusion in light of the circumstances surrounding the application for the '244 patent. In analyzing these circumstances, the court is left with the firm and unmistakable conviction that the Plaintiff engaged in a campaign to withhold the most material references from the PTO. Not a single one of the most material references available was disclosed to the patent examiner. Instead, the Plaintiff disclosed examples of marginally material references, and vigorously distinguished

the '244 idea from those references. The Defendants have clearly and convincingly proven that the PTO was not informed of the Major Motion Furniture and that the Plaintiff's failure to do so was a deliberate attempt to mislead the PTO. As such, the '244 patent is rendered unenforceable.

### E. The Benchcraft Ducks Furniture

Beginning in 1985, Benchcraft Furniture Company developed and sold a modular furniture arrangement consisting of a left-arm facing reclining chair, a matching upholstered table and a right-arm facing reclining chair. See Ex. D–141. This Benchcraft "Ducks" furniture group was part of one of Benchcraft's best selling lines of furniture during the time that Sproule, Terry and Metts worked for Benchcraft.

The Benchcraft Ducks furniture was material because it illustrated the use of a table or console between two reclining chairs, a key part of the '244 invention.[16] As such it was more material than the dual reclining sofas that were disclosed; none of those references contained a table or console between the reclining chairs. A reasonable patent examiner would have considered the Ducks reference important because it illustrated one step in the progression of ideas within the motion furniture industry. Disclosure of the Ducks furniture would have allowed the PTO to better understand the manner in which motion furniture design advanced over time from simple reclining sofas and loveseats to the Ducks arrangement through the Major Motion and Talley developments to pieces such as Durling's and the '244 idea. As it was, however, the Plaintiff led the PTO to believe that the '244 idea was the next step, without any intervening developments, after simple reclining sofas and loveseats. This was not a true representation of the manner in which motion furniture has evolved.

---

**16.** Indeed, the Plaintiff, in its post-trial submission, admits that the Ducks furniture qualifies as "uncontested prior art" and was thus material. Plaintiff's Proposed Findings of Fact, pp. 21–22.

As was the case with the Major Motion furniture, the Plaintiff claims to have disclosed the Ducks furniture to the PTO during the June 12, 1991, interview. And, as with the Major Motion furniture, the Defendants have shown clearly and convincingly that the Ducks furniture was not disclosed. Neither the examiner's Summary Record nor the Plaintiff's subsequent Amendment mention the disclosure of the Ducks furniture nor, for that matter, the disclosure of any furniture containing a table or console between two reclining chairs.

As for intent, it is the totality of the circumstances that leads to the conclusion that the Plaintiff withheld this reference in a deliberate attempt to mislead the PTO. The Plaintiff was all too quick to disclose the least material references available, while declining to reveal every single one of the most material references. Such conduct can clearly and convincingly only be the result of an intent to mislead the PTO.

In balancing the evidence, the court concludes that the Plaintiff's conduct as to the Ducks reference was so culpable as to render the '244 patent unenforceable. The Ducks furniture was more material to the '244 application than any of the references the Plaintiff disclosed to the PTO. The Ducks furniture's omission is especially troubling because Ducks is an early example of the use of a console or table between two reclining chairs and because Sproule, Terry and Metts worked at Benchcraft during the time the Ducks furniture was developed.

### F. Conclusion

■ After balancing the materiality of the foregoing undisclosed references with the evidence regarding the intent of the individuals substantively involved in the prosecution of the '244 patent, the court finds, in light of all the surrounding circumstances, that the Defendants have shown by clear and convincing evidence that the Plaintiff committed inequitable conduct during the prosecution of the '244 patent.

As the Plaintiff made clear, three of the main elements of the '244 idea are the armless inner recliner, the fixed console, and the location of the recliner controls on the console. The five undisclosed material references each contain at least one of these elements. The Talley patent illustrates an armless recliner appropriate for use in a sectional arrangement; the Kanowsky furniture shows a recliner-console-seat layout on the same side of a wedge as part of a sectional arrangement; the Durling furniture depicts recliner controls mounted on a console; the Major Motion furniture embodies the use of a fixed console between two reclining chairs; and the Ducks furniture is an early example of the use of a table or console between two recliners. That these references individually lack one or more elements that are present in the '244 sofa is not dispositive on the issue of materiality because such references are often combined to reject a patent application. *Baxter*, 149 F.3d at 1328. In essence, the '244 idea is to take a unit such as Kanowsky's, add a Major Motion-like fixed console, replace the Kanowsky armless inner chair with an armless inner recliner such as Talley's and, like Durling, use a Super Sagless manufactured (or similar) mechanism to mount the recliners' controls on the console. Notwithstanding the possible merits of the Plaintiff's idea, it is undeniable that the withheld references all contain material elements of the '244 idea; as such, these references should have been disclosed to the PTO.

■ The Plaintiff's knowledge of the materiality of the withheld references is obvious given its attempts, in its Petition to Make Special,[17] to call the PTO's attention to the fact that the disclosed references did not possess certain characteris-

---

**17.** Misleading statements in a Petition to Make Special can independently form the basis of a finding of inequitable conduct. *See* *e.g., General Electro Music,* 19 F.3d at 1410–12.

tics that the Plaintiff knew the withheld references did possess. For example, the Plaintiff stated in its Petition that "the references do not even disclose a pair of console-joined reclining seats." *See* Ex. P–2A, p. 40. The withheld Durling and Major Motion references, of course, disclosed just that, as the Plaintiff was well aware. Later in the Petition the Plaintiff stated that "none of the references cited particularly discloses a push button reclining control mechanism upon a console." *See* Ex. P–2A, p. 42. While this statement may be literally true in that none of the references that the Plaintiff actually disclosed had console mounted controls, the withheld Durling furniture reference did have console mounted controls, a fact the Plaintiff was aware of. Thus, while the Plaintiff restricted these statements to the references that it actually disclosed, the Plaintiff was fully aware that one or more nondisclosed references contained these very features. This type of conduct indicates a desire to mislead the PTO as to the scope of the available relevant material information.

In light of all the foregoing, the court finds that the Plaintiff's conduct, in its entirety, manifested a culpable state of mind evidencing an intent to deceive the PTO. No evidence exists tending to show that the Plaintiff had a good faith reason for withholding the references. Each of the withheld references were highly material, and the Plaintiff was acquainted with each of them. Through withholding these references, the Plaintiff ensured that the PTO would be unaware of the most material references; none of the references the Plaintiff disclosed were as material as the withheld references. While the nondisclosure of any one of these withheld references is sufficient to warrant a finding of inequitable conduct, it is the totality of the circumstances and the Plaintiff's overall conduct that mandates the '244 patent be held unenforceable. The court has carefully considered all of the evidence and finds that the Plaintiff committed inequitable conduct of such a magnitude that

the '244 patent must be held unenforceable.

### Obviousness

The Defendants claim that the '244 patent is invalid as "obvious," an affirmative defense set forth in 35 U.S.C. § 103(a). This provision provides, in relevant part:

A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

■■■ Under 35 U.S.C. § 282, a patent is presumed valid and one challenging its validity bears the burden of proving invalidity by clear and convincing evidence. *Innovative Scuba Concepts, Inc. v. Feder Indus., Inc.*, 26 F.3d 1112, 1115 (Fed.Cir. 1994). To overcome this presumption, the Defendants must show by clear and convincing evidence that the '244 patent is invalid as obvious. *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1356 (Fed.Cir.1999).

The Supreme Court has explained that in determining obviousness under 35 U.S.C. § 103(a), four kinds of factual inquiries are conducted:

(1) the scope and content of the prior art;

(2) the differences between the prior art and the claimed invention;

(3) the level of ordinary skill in the field of the invention; and

(4) objective secondary considerations such as commercial success of the invention, copying of the invention by others in preference to the prior art, successful licensing of the patent within the industry and failure of others to make the invention.

*Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545 (1966); *See In re Dembiczak*, 175 F.3d 994, 999 (Fed.Cir.1999) (nonobviousness is

question of law based upon *Graham*'s four factual inquiries).

■ For the reasons outlined below, the court finds that the Defendants have not shown by clear and convincing evidence that the '244 patent is invalid for obviousness. In the interest of brevity, the court focuses its analysis only on the dispositive aspects of the evidence that was introduced at trial.

### A. The Differences Between the Prior Art and the Claimed Invention

The subject matter sought to be patented must be considered as a whole when deciding obviousness under 35 U.S.C. § 103. *Kahn v. General Motors Corp.*, 135 F.3d 1472, 1479–80 (Fed.Cir.1998). As part of this analysis, the court must examine the specific differences between the prior art and the claimed invention to determine whether the subject matter sought to be patented would have been obvious to the hypothetical person with ordinary skill in the pertinent art.[18]

First, the court notes that, as is the case with many patents, the '244 patent represents, at its core, a fairly simple and straightforward idea. While many modern-day patents cover complex inventions springing from high technology industries, the Federal Circuit has made clear that "the patent system is not limited to sophis-

ticated technologies [nor] opened only to those who make complex inventions ..." *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1572 (Fed.Cir.1987). To illustrate, cases in which the invention was comparatively simple but deemed nonobvious by the Federal Circuit include *In re Dembiczak*, 175 F.3d 994 (Fed.Cir.1999) (Halloween-style pumpkin decorated trash bag); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308 (Fed.Cir.1999) (hanger tag for eyeglasses); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953 (Fed.Cir. 1997) (fishing lures) ("Good ideas may well appear 'obvious' after they have been disclosed, despite having been previously unrecognized."); *In re Oetiker*, 977 F.2d 1443 (Fed.Cir.1992) (hose clamp) ("Simplicity is not inimical to patentability."). Indeed, in the Federal Circuit's *Berkline* opinion, the court stated that, in reference to the '244 patent, "simplicity alone is not determinative of obviousness." *Gentry Gallery*, 134 F.3d at 1478.

In patent infringement cases where an obviousness defense is raised, the defendant usually argues that each element of the challenged patent's claims can be found in one or more of the prior art references, although not in the precise combination found in the patent.[19] That all the elements of the claimed invention are found in various prior art references

---

**18.** In this case, the status of the following references as relevant prior art references is undisputed:

 (1) sectional sofas with one-armed recliners at the extreme ends (such as those depicted in Ex. D–568 and Fig. 5 of U.S. Patent No. 4,740,031—the "Rogers" patent, Ex. D–72);

 (2) the Kanowsky furniture, a sectional sofa consisting of an outside armed recliner—console (non-permanently affixed)—armless chair arrangement on one side of the wedge (Ex. D–42);

 (3) the Talley patent, an armless recliner with its recessed pushbutton control mechanism mounted under the seat cushion, on top of the side rail (Ex. D–36);

 (4) the Benchcraft "Ducks" furniture arrangement, consisting of side-by-side handle-operated one-armed recliners separated by a table (Ex. D–141);

 (5) furniture arrangements in which recliners are activated by push button mechanisms such as those manufactured by Super Sagless Corporation; and

 (6) stand alone (non-sectional) sofas with reclining seats at each end (i.e.,dual reclining sofas) (Ex. D–123).

 Moreover, even if the references which the Plaintiff disputes qualify as prior art (the Durling furniture and the Major Motion furniture, *inter alia*) are deemed to be prior art, the court nevertheless finds that the Defendants have not met their burden of proving obviousness by clear and convincing evidence.

**19.** If *all* the elements of one or more of a patent's claims are found in a *single* prior art reference, the claim or claims are "anticipated," and thus invalid. 35 U.S.C. § 102.

does not, of course, mean that the invention is obvious. Virtually all patentable inventions are drawn from combinations of known elements. *See Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1556 (Fed.Cir.1985) ("Only God works from nothing. Men must work with old elements.").

When, as here, the party attacking the patent seeks to rely on a combination of prior art references to prove a claim of obviousness, they bear the burden of coming forward with evidence that supports the use of these prior art references in combination. *Ashland Oil, Inc.*, 776 F.2d at 293; *see C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1352 (Fed.Cir.1998) (teaching, suggestion, or motivation to combine is an "essential evidentiary component of obviousness holding"); *Arkie Lures*, 119 F.3d at 957 ("It is insufficient to establish obviousness that the separate elements of the invention existed in the prior art, absent some teaching or suggestion, in the prior art, to combine the elements."); *Custom Accessories, Inc. v. Jeffrey–Allan Indus., Inc.*, 807 F.2d 955, 959 (Fed.Cir.1986) (Because virtually all inventions are combinations of old elements, fact that invention at issue may be combination of known elements is irrelevant to question of obviousness.).

In this case, the Defendants face this precise dilemma because, while the elements of the '244 idea may have been individually present in one or more prior art references, none of the references suggested combining those elements in the manner the Plaintiff combined them. While, in essence, the '244 idea may be simply to place a Talley armless recliner into a Kanowsky arrangement and use a Super Sagless-like mechanism to mount the recliners' controls on the console, the Defendants have not shown by clear and convincing evidence that any of the prior art references suggest a motivation to so combine these disparate elements.

## B. Conclusion

Based on 35 U.S.C. § 103 and the Supreme Court's *Graham* factors, the court finds that the claims of the '244 patent are not invalid for obviousness. The Defendants have failed to demonstrate by clear and convincing evidence that the prior art, taken as a whole, would have suggested the Plaintiff's invention to one of ordinary skill in the furniture industry at the time the invention was made. Further, while several of the prior art references contained various elements of the '244 invention and were therefore material to the '244 application, the Defendants have not offered evidence showing that any of the prior art references suggested combining the elements in the manner that the Plaintiff combined those elements in a single piece of furniture.

### Patent Misuse

Defendant Parkhill claims that the Plaintiff has engaged in patent misuse, an affirmative defense upon which Parkhill bears the burden of proof.

The defense of patent misuse arises from the equitable doctrine of unclean hands, and relates generally to the use of patent rights to obtain or to coerce an unfair commercial advantage. The doctrine of patent misuse forbids a patentee from taking actions that affect competition in unpatented goods or that otherwise extend the economic effect beyond the physical scope of the patent grant (by charging a royalty on goods not covered under the patent) or the temporal scope of the patent grant (by charging a royalty beyond the patent's expiration date) with anticompetitive effect. *C.R. Bard*, 157 F.3d at 1372.

Hence, the key inquiry is whether, by imposing conditions that derive their force from the patent, the Plaintiff has impermissibly broadened the scope of the '244 patent grant with anticompetitive effect. *Id.; see Virginia Panel Corp. v. Mac Panel Co.*, 133 F.3d 860, 868 (Fed.Cir.1997) ("[I]n application, the doctrine [of patent misuse] has largely been confined to a handful of specific practices by which the patentee seemed to be trying to 'extend'

his patent grant beyond its statutory limits.").

■ The crux of Parkhill's charge of patent misuse appears to be that the Plaintiff attempted to broaden the physical scope of the '244 patent by licensing products which were covered by Walter Durling's '153 patent but were not covered by the Plaintiff's '244 patent. The evidence, however, suggests otherwise.

In late 1996, the Plaintiff sent letters to Parkhill, and other companies, offering to license, *inter alia*, the '244 patent and the Durling patent. Enclosed with each company's letter was a draft license agreement.[20] *See* Ex. D–284. In response to the Plaintiff's letter, Parkhill stated that it already had a license under the '153 patent; it requested that the Plaintiff send a draft license agreement covering solely the '244 and related patents. *See* Ex. D–288. The Plaintiff agreed, and on April 14, 1997, responded that, instead of drafting another license agreement, Parkhill could simply take the original draft license agreement (Ex. D–284) and strike all references to the '153 patent. *See* Ex. D–289. Parkhill then commenced to bargain with the Plaintiff over the financial terms of the agreement and the price the Plaintiff was seeking in return for a license of the '244 patent. *See* Ex. D–290. No agreement was ever reached between the parties.

Parkhill, had it accepted the Plaintiff's offer of April 14, 1997, would have paid the

Plaintiff a royalty only on items covered by the Plaintiff's patents, and would not have paid a royalty to the Plaintiff on items covered only by the Durling '153 patent. The Plaintiff never attempted to "extend the physical scope" of the '244 patent. Parkhill was not forced to pay the Plaintiff for items covered only by the Durling patent and not covered by the '244 patent. In fact, the opposite occurred.

In light of the foregoing, the court finds that Parkhill has failed to establish that the Plaintiff engaged in patent misuse.

*Laches*

■ Laches is a long-recognized defense to a patent infringement suit that arises when a patent holder delays bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar to the recovery of damages. *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed.Cir.1995). Laches focuses on the dilatory conduct of the patentee and the prejudice which the patentee's delay has caused. *Gasser*, 60 F.3d at 773. If successful, the laches defense bars relief only for damages accrued prior to suit. *Id.*

■ To successfully invoke laches, Franklin must prove by a preponderance of the evidence:

**20.** The court heard testimony and received exhibits attempting to shed light on the circuitous events surrounding the Plaintiff's reasoning behind its attempts, later abandoned, to license the Durling patent. It appears that, in mid–1994, Durling and the Plaintiff were mired in settlement negotiations regarding their litigation in this District. As part of those negotiations, the parties entered into an informal prospective settlement agreement, the validity of which is not an issue, on September 28, 1994. *See* Exs. D–166, D–291. Paragraph 2 of this agreement states that "Gentry [GFI] will acquire the exclusive right to sublicense the '153 patent." While the agreement was signed by all interested parties, Paragraph 2 is phrased in prospective terms and it is unclear whether the Plaintiff

ever actually acquired the exclusive right to sublicense the '153 patent. It appears that it did not. In light of this, the Plaintiff's subsequent assertion of the exclusive right to sublicense the '153 patent is puzzling. Nevertheless, Durling apparently did not feel bound by the agreement; in July of 1995, he granted Parkhill a license to manufacture furniture protected by the '153 patent. *See* Ex. D–285. It was this license that Parkhill made the Plaintiff aware of in late 1996 and early 1997. The court notes that these events, while engrossing, are recounted here solely for background purposes and in the interest of completeness; they bear little relevance on the issue of whether the Plaintiff misused the '244 patent.

(1) that the plaintiff delayed filing suit an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of its claim against the defendant; and

(2) the delay resulted in material prejudice or injury to the defendant.

*Id.; A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed.Cir. 1992). In patent infringement cases, laches is presumed when a party has delayed filing suit for more than six years after it first becomes aware, or reasonably should have become aware, of the existence of a claim. *Aukerman*, 960 F.2d at 1028.

This presumption, or lack thereof, is a pivotal part of a court's laches analysis. If the presumption applies, a burden of production shifts onto the Plaintiff to present evidence both as to the excusability of the delay and the lack of prejudice resulting from the delay. *Id.* at 1037. When, as here, the delay has been less than six years, no presumption of laches exists. As such, no burden of production shifts onto the Plaintiff and the Defendant, who in any event would bear the ultimate burden of persuasion, must present affirmative evidence that the Plaintiff's delay was unreasonable and inexcusable and that the Defendant was materially prejudiced.

Ignoring this burden and merely attempting to discredit the reasons for delay that the Plaintiff would potentially raise, if the presumption applied and the Plaintiff was under a burden of production to proffer an excuse, is insufficient in cases such as this where no presumption applies. *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1556 (Fed.Cir.1996). In sum, a presumption of unreasonable delay arises if the delay is over six years. In that case, the delay must be excused and the Plaintiff must proffer an excuse. If the delay is not over six years, then the patentee need not excuse the delay, and the burden of going forward with the evidence remains on the laches proponent (Franklin in this case).

Here, the '244 patent was issued to the Plaintiff on November 12, 1991. The Plaintiff filed this action on February 3, 1997—a maximum delay of five years, two months, and 22 days.

As to the first prong of this defense, unreasonable and inexcusable delay, Franklin offered no evidence whatsoever. Rather, Franklin simply pointed to the delay and attempted to discredit what it believed would be the Plaintiff's reasons for the delay. This approach overlooks the fact that Franklin bears the burden of proof on this issue and must affirmatively present evidence supporting its position. Since there is no presumption of laches here, the Plaintiff need not offer any reason for the delay. As such, the court finds that Franklin has failed to prove that any delay in bringing suit on the Plaintiff's part was unreasonable and inexcusable. Hence, Franklin's laches defense fails.

In the interest of completeness, however, the court will analyze the second element of this defense—material prejudice attributable to the Plaintiff's delay. This prejudice "may be either economic prejudice or evidentiary prejudice." *Aukerman*, 960 F.2d at 1033.

Economic prejudice may arise when a defendant will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit. *Id.* Losses attributable to a finding of liability for infringement, however, are not sufficient to prove material prejudice; were that the case, economic prejudice would arise in every case. *Id.* Instead, the court must look for a change in the economic position of the alleged infringer during the period of delay. *Id.*

Franklin's evidence concerning any economic prejudice it suffered was scant and insufficient to show material prejudice. The only economic prejudice it alleges it suffered was the very type of loss that the Federal Circuit has made clear does not qualify—losses attributable to a finding of liability for infringement. *See id.* As such, the court finds that Franklin did not

suffer any material economic prejudice as a result of the Plaintiff's delay in bringing this action.

Evidentiary prejudice may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts. *Id.* Conclusory allegations that witnesses' memories have faded, or that there is missing documentary evidence are not sufficient, however, to show material prejudice. *Meyers v. Asics Corp.,* 974 F.2d 1304, 1308 (Fed.Cir.1992). Rather, Franklin must prove that the loss of important documents or witness recollection was caused by the Plaintiff's delay and that the loss of that evidence materially prejudiced Franklin's ability to present its case to the court. *Aqua Queen,* 93 F.3d at 1558.

Franklin's claim of evidentiary prejudice begins with the elusive "Watson Cole" file. Watson, Cole, Grindle & Watson is a patent law firm located in Washington, D.C. The Plaintiff initially hired this firm as its patent counsel regarding the '244 invention and patent application. In early October of 1990, the Plaintiff and Watson, Cole parted ways and the Plaintiff hired its current patent counsel. As is customary in such situations, Watson, Cole forwarded the information it had concerning the '244 idea to either the Plaintiff or the Plaintiff's new lawyers. It is this information that has come to be known as the Watson, Cole file. *See* Exs. D–1391, 1392, 1393.

Franklin alleges that missing from the file, as produced by the Plaintiff during discovery, is information concerning a prior art search completed by Watson, Cole. Franklin claims that it was therefore materially prejudiced and unable to present a full and fair defense during this trial because it was unable to precisely determine the prior art references uncovered by Watson, Cole.

Franklin's claim of material prejudice as to the Watson, Cole file fails for several reasons. First, Franklin has not proven that it has been materially prejudiced by its inability to locate what it believes is the entire file or that the court's ability to judge the facts has been undermined by virtue of lacking this information. Nor has Franklin proven that Watson, Cole actually provided more information to the Plaintiff than the Plaintiff produced during discovery. In light of the ample amount of evidence produced in this case, it strains credulity to suggest that Watson, Cole uncovered prior art references more material than those that were introduced at trial. In any event, Franklin failed to convince the court that the information it seeks was actually turned over by Watson, Cole to the Plaintiff.

Next, and perhaps most significantly, Franklin has not shown that any information which may be missing from the file is missing due to any delay attributable to the Plaintiff. Indeed, Franklin's main thrust at trial regarding the file seemed to be that the documents were missing because they had been intentionally withheld, not that they were missing because of any delay. And, as the Federal Circuit has stated, it is incumbent upon Franklin to prove that the loss of any important documents was caused by the Plaintiff's delay in filing suit. *Aqua Queen,* 93 F.3d at 1558. Moreover, the court heard testimony from the former Watson, Cole attorney who worked on the case, Kevin Osborne. His testimony did not support Franklin's position regarding the Watson, Cole file. In sum, conclusory allegations of the nature presented by Franklin are grossly insufficient to show material prejudice, and Franklin has failed to prove that it suffered material evidentiary prejudice based on the events surrounding the Watson, Cole file.

The remainder of Franklin's assertions regarding material evidentiary prejudice also fall far short of the required standard set forth by the Federal Circuit. First, Franklin mentions files that belonged to the Gera design team which were not produced by the Plaintiff during discovery.

In addition to the dubious relevance of these files, Franklin did not offer any proof that the Plaintiff's delay caused the loss of these files. As with the Watson, Cole file, Franklin seems to assert that these documents were intentionally withheld, rather than stating that their unavailability was due to any delay. For both these reasons, Franklin was not materially prejudiced by the Gera files' unavailability.

Franklin also asserts that it has been materially prejudiced due to the unavailability of the Plaintiff's 1989 and 1990 telephone records. The court disagrees. Franklin's ability to present a full and fair defense on the merits was not hampered in any way by virtue of its inability to present these records to the court. The court was presented with a plethora of evidence concerning the Plaintiff's activities in 1989 and 1990 and was able to sort out those events and determine the facts as to the development of the '244 idea. As such, the court's ability to judge the facts was not undermined and Franklin suffered no material prejudice as a result of these records being unavailable.

Finally, Franklin asserted, in rather conclusory fashion, that the passage of time has degraded witness recollection concerning the events surrounding the '244 patent and, as a result, Franklin suffered material evidentiary prejudice. The court again disagrees. All of the witnesses, save one, that Franklin claims suffered from diminished recollection (Sproule, Terry, Metts, Mr. Greenfield and Byrd) testified during the *Berkline* trial in addition to being deposed in 1992; as such, their contemporaneous testimony was preserved and available for use during this trial. As for Wayne Byrd, the only witness listed above that did not testify in *Berkline*, Franklin did not suffer any material evidentiary prejudice as a result of his alleged degraded recollection because his testimony was discounted by the court due to lack of corroboration. In other words, Byrd's testimony, even if his memory was degraded, did not damage Franklin nor prevent the court from properly judging the facts.

In sum, the court finds that Franklin has not suffered material evidentiary prejudice. The alleged lack of any documents or testimony certainly did not render Franklin unable to present a full and fair defense on the merits; the court was fully able to judge the facts based on the testimony presented at trial. Therefore, the court finds that Franklin has failed to establish its laches defense by a preponderance of the evidence.

### Equitable Estoppel

■ Defendant Franklin Corp. has asserted an equitable estoppel defense. To prove estoppel, Franklin must show by a preponderance of the evidence:

(1) that the Plaintiff, through misleading conduct, led the Defendant to reasonably infer that the Plaintiff did not intend to enforce its patent against the Defendant;

(2) that the Defendant relied on that conduct; and

(3) that due to its reliance, the Defendant will be materially prejudiced if the Plaintiff is allowed to proceed with its claim.

*Aukerman,* 960 F.2d 1020, 1028.

To establish equitable estoppel, Franklin must first show that the Plaintiff made misleading statements and engaged in conduct that "support[s] an inference that the [Plaintiff] did not intend to press an infringement claim against" Franklin. *See id.* at 1042. Silence on the part of a patentee can constitute misleading conduct if the silence is accompanied by some other factor indicating that the silence was sufficiently misleading to amount to bad faith. *ABB Robotics, Inc. v. GMFanuc Robotics Corp.,* 52 F.3d 1062, 1064 (Fed.Cir.1995); *Aukerman,* 960 F.2d at 1042. The most common scenario is one in which a new patentee threatens an alleged infringer with enforcement and then remains silent and fails to take action for an extended period of time. *ABB Robotics,* 52 F.3d at 1064. Here, Franklin claims that the Plaintiff's silence and inactivity led Frank-

lin to infer that the Plaintiff would not press an infringement action against Franklin.

■ The court finds that Franklin has failed to establish this element of its claim. On November 12, 1991, the day the '244 patent issued, the Plaintiff sent Franklin a cease and desist letter, threatening Franklin with an infringement action. The Plaintiff then became embroiled in the *Berkline* and *Peoplounger* cases, the first of several courtroom battles concerning the '244 patent. In the midst of this litigation, on April 2, 1992, the Plaintiff sent Franklin another letter threatening an enforcement action. Then, in November 1996, the Plaintiff again contacted Franklin and offered to license the '244 patent to Franklin. The current litigation commenced in February 1997.

In addition to this activity, Franklin admitted that it knew the Plaintiff would ultimately take action regarding the '244 patent and that its salesmen were being warned of forthcoming litigation. So, while Franklin was not sued until February 1997, the Plaintiff was hardly silent during the period between the '244 patent's issuance and the commencement of the current litigation.

The court concludes that the Plaintiff's conduct during the period between November 1991 and February 1997 did not mislead Franklin into reasonably inferring that the Plaintiff did not intend to press an infringement claim. The Plaintiff here did not simply threaten action and then remain completely silent for an inordinate or misleading period of time. For this reason, as well as the previously discussed fact that Franklin cannot show any material prejudice, the claim for equitable estoppel fails.[21]

*Conclusion*

In sum, the court finds that the Defendants have shown by clear and convincing evidence that the Plaintiff obtained the '244 patent through inequitable conduct; for that reason, the '244 patent is rendered unenforceable. The court finds, however, that the Defendants have not proven by clear and convincing evidence that the '244 patent is invalid as obvious nor have the Defendants established the defenses of patent misuse, equitable estoppel or laches by a preponderance of the evidence. As such, those defenses fail.

A separate order in accordance with this opinion shall issue this day.

*ORDER*

After a bench trial and pursuant to an opinion issued this day, the court finds that

(1) United States Patent Number 5,064,-244 is unenforceable due to the Plaintiff, GFI, Inc., having engaged in inequitable conduct before the United States Patent and Trademark Office in obtaining the patent;

(2) the defenses of obviousness, patent misuse, equitable estoppel and laches have not been adequately proven; and

(3) this case is CLOSED.

---

21. The court also notes that Franklin failed to establish reliance, the second element of its equitable estoppel claim. To show reliance, Franklin "must have had a relationship or communication with the Plaintiff which lulled [Franklin] into a sense of security in going ahead with [its potentially infringing activi- ty]." *See Aukerman,* 960 F.2d at 1043. The communications between Franklin and the Plaintiff weighed against such a finding and the court concludes that any purported reliance by Franklin upon the Plaintiff's conduct here was not reasonable.