**ABB ROBOTICS, INC. and Cincinnati Milacron, Inc., Plaintiffs–Appellants**

v.

**GMFanuc ROBOTICS CORPORATION, Defendant–Appellee.**

No. 94–1334.

United States Court of Appeals, Federal Circuit.

April 21, 1995.

Rehearing Denied; Suggestion for Rehearing In Banc Declined May 22, 1995.

Walter D. Ames, Watson, Cole, Grindle & Watson, Washington, DC, for plaintiffs-appellants. With him on the brief was Lawrence R. Radanovic.

Ernie L. Brooks, Brooks & Kushman, P.C., Southfield, MI, for defendant-appellee. With him on the brief was Jeffrey M. Szuma.

Before RICH, PLAGER, and BRYSON, Circuit Judges.

RICH, Circuit Judge.

ABB Robotics (ABB) and Cincinnati Milacron (CM) appeal the August 10, 1993 decision of the United States District Court, Eastern District of Wisconsin, *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 828 F.Supp. 1386, 28 USPQ2d 1581 (E.D.Wis. 1993), granting GMFanuc Robotics's (GMF) motion for summary judgment based on laches and estoppel. As to estoppel, we affirm.

## I.

U.S. Patent No. 4,068,536 (the '536 patent) issued on January 17, 1978 and was assigned to CM. Between 1984 and 1986, correspondence and meetings took place between CM and GMF regarding the '536 patent, CM charging GMF with infringement and GMF denying any liability. Specifically, in September 1986, GMF denied that it infringed. CM took no further action. Indeed, sometime in late 1986 CM management decided not to sue GMF for infringement of the '536 patent. Further, during this time period, CM and GMF discussed other CM patents as well and as a result, GMF took a license under what both parties refer to as CM's control patents.

In 1988, CM granted ABB an exclusive license under the '536 patent. In June 1991, ABB charged GMF with infringement of the '536 patent and on June 17, 1992 filed the action which led to this appeal. On August 10, 1993, the trial court granted GMF's motion for summary judgment on the grounds of laches and estoppel and dismissed the case with prejudice. ABB and CM appeal.

## II.

Estoppel is an equitable defense to a charge of patent infringement and, if proven, may entirely bar an infringement suit. Three elements are required to prove estoppel. The first is that the patentee, through misleading conduct, leads the alleged infringer to reasonably infer that he does not intend to enforce the patent against the alleged infringer. The conduct may include specific statements, action, inaction, or silence where there was an obligation to speak. The second element is that the alleged infringer relies on the patentee's conduct. The final element is that due to the reliance, the alleged infringer will be materially prejudiced if the patentee is permitted to proceed with its infringement suit. Being an equitable doctrine, estoppel is committed to the sound discretion of the trial judge whose decision we review under the abuse of discretion standard. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028, 22 USPQ2d 1321, 1325 (Fed.Cir.1992) (in banc). Unlike laches, no presumption adheres to an estop-

pel defense. Thus, a party advancing an estoppel defense must prove each of the elements thereof. *Id.* at 1043, 22 USPQ2d at 1337.

### III.

As to the first element, the trial court found that CM and GMF last discussed infringement of the '536 patent in September 1986 when the parties met and GMF asserted that it did not infringe. CM took no further action and indeed the infringement issue was not raised again until June 1991 when ABB charged GMF with infringement.

■ Misleading action by the patentee may be silence, if such silence is accompanied by some other factor indicating that the silence was sufficiently misleading to amount to bad faith. *Hemstreet v. Computer Entry Sys. Corp.,* 972 F.2d 1290, 1295, 23 USPQ2d 1860, 1864 (Fed.Cir.1992); *Aukerman,* 960 F.2d at 1042, 22 USPQ2d at 1336. The trial court found that CM's misleading action was combined with other factors including: (1) CM's objection to the activities as infringing followed by inaction; (2) the relationship between CM and GMF's parent, General Motors, CM's largest single robotics customer; (3) GMF's knowledge that CM was not active in the area of the '536 patent and was therefore not losing sales or profits as a result of the alleged infringement; and (4) other negotiations which took place between CM and GMF which led to licensing agreements under other CM patents.

On appeal, ABB and CM contend that there was no misleading conduct because there was no "legally required threat of immediate and vigorous enforcement" of the '536 patent by CM "that must have preceded its period of silence." However, such an enforcement threat followed by silence, contrary to appellants' assertion, is not the *only* way that silence can be misleading inaction. Rather, as plainly stated in *Aukerman,* inaction, "combined with other facts respecting the relationship or contacts between the parties" may "give rise to the necessary inference that the claim against the defendant is abandoned." *Aukerman,* 960 F.2d at 1042, 22 USPQ2d at 1336. Moreover, that an immediate threat of enforcement followed by

silence may be the most common scenario does not mean that it is the only set of facts which can support a finding of misleading silence. This court's case law is not to the contrary. *See Meyers v. Brooks Shoe, Inc.,* 912 F.2d 1459, 16 USPQ2d 1055 (Fed.Cir. 1990); *Meyers v. Asics Corp.,* 974 F.2d 1304, 24 USPQ2d 1036 (Fed.Cir.1992).

We agree with the trial court that CM's long period of inaction after GMF had denied infringement combined with the "other factors" found by the trial court led GMF to reasonably conclude that CM did not intend to enforce the '536 patent against it. The trial court's finding of misleading action was not an abuse of discretion.

■ The trial court next found that GMF proved the second element of estoppel, reliance, because GM's completed negotiations with respect to the control patents, when viewed in light of the abrupt discontinuation in correspondence with respect to the '536 patent, gave rise to the "necessary inference" that CM's infringement claim against GMF with respect to the '536 patent had been abandoned. The trial court also found that CM's assertion that it would not license GMF under the '536 patent strengthened this inference, as did GMF's knowledge that CM would have to choose between enforcing its patent rights and maintaining its business relationships with one of its best customers, GM.

On appeal, ABB and CM contend that the trial court improperly decided whether GMF *could have relied* on CM's silence instead of using the correct standard, whether GMF *actually* relied on CM's conduct. We disagree. From its opinion, it is clear that the trial court did not consider abstract theoretical possibilities, but rather, looked at the conduct of the parties and decided that GMF had a relationship with CM that lulled GMF into a sense of security that it would not be sued. *Aukerman,* 960 F.2d at 1043, 22 USPQ2d at 1337. Indeed the trial court found, and ABB and CM have not convinced us otherwise, that the only possible inference from the record is that CM would leave GMF unmolested.

■ As to the final element of estoppel, prejudice, the trial court found that GMF proved economic prejudice by showing that this suit would "result in damages which likely would have been prevented by an earlier suit." *Aukerman,* 960 F.2d at 1033, 22 USPQ2d at 1329. Damages included GMF's expenditures on procuring additional patents in the field of the '536 patent and development of its P–155 robot arm. The trial court also found that the threefold expansion of GMF's allegedly infringing activity was "because of and as a result of the delay." *Hemstreet,* 972 F.2d at 1294, 23 USPQ2d at 1863. The trial court based this conclusion on its finding that a 1984 GMF internal memorandum indicated that it stopped production of a different robot arm it determined might infringe the '536 patent. Additionally, the trial court considered that GMF took a license under the CM control patents, thereby modifying its behavior to avoid infringement, and found that action supported an inference that GMF would have done the same with respect to its device accused of infringing the '536 patent.

On appeal, ABB and CM contend that the trial court incorrectly found that GMF's increased sales alone constituted the requisite change in economic position necessary for a finding of material economic prejudice. ABB and CM assert that such increased sales alone are not enough and that "other factors, *e.g.,* making non-recoupable capital investment in order to effect the increase in sales," are necessary.

■ The trial court stated that "increasing sales [without additional evidence of capital investments] may constitute economic prejudice." We agree and note that, contrary to ABB and CM's contentions, capital investments by GMF per se are not a prerequisite to a finding of economic prejudice. Additionally, as the trial court noted, cases in which economic prejudice has been found lacking did not so hold because of a lack of capital investments, but, rather, because the alleged infringer failed to prove that their increased expenditures, i.e., on marketing and develop-

ment, were in any way related to actions taken by the patentee. *Compare Meyers v. Brooks Shoe, Inc.,* 912 F.2d 1459, 1463, 16 USPQ2d 1055, 1058 (Fed.Cir.1990) ("[T]he record supports the conclusion that the time and money Brooks spent . . . was not related to Meyers' patented invention and may have been spent anyway.") with *Jamesbury Corp. v. Litton Indus. Prods., Inc.,* 839 F.2d 1544, 1554, 5 USPQ2d 1779, 1787 (Fed.Cir.1988) ("[H]ad [president of alleged infringing company] known of the allegation of infringement . . . he would have sold the corporation rather than make continued capital investments. . . . [T]hose investments were uncontroverted evidence of material prejudice.") The proper inquiry is whether there has been a *"change* in the economic position of the alleged infringer during the period of delay." *Aukerman,* 960 F.2d at 1033, 22 USPQ2d at 1337. The trial court correctly found that there was a change in GMF's economic position which resulted from CM's delay. We therefore agree that GMF proved economic prejudice.

### IV.

Because the trial court correctly found that GMF proved each of the elements of estoppel and because no other evidence or facts respecting the equities of the parties precludes the application of estoppel in this case, the trial court's grant of summary judgment based on estoppel is affirmed. We have considered ABB and CM's other arguments with respect to estoppel and find them to be unpersuasive. As we have affirmed the trial court's holding of estoppel, it is unnecessary for us to reach the laches issue.

AFFIRMED.