# United States Court of Appeals
# for the Federal Circuit

---

**ASPEX EYEWEAR INC.**
**AND CONTOUR OPTIK, INC.,**
*Plaintiffs-Appellants,*

**v.**

**CLARITI EYEWEAR, INC.,**
*Defendant-Cross-Appellant.*

---

2009-1147, -1162

---

Appeal from the United States District Court for the Southern District of New York in 07-CV-2373, Judge Denny Chin.

---

Decided: May 24, 2010

---

MICHAEL A. NICODEMA, Greenberg Traurig, LLP, of Florham Park, New Jersey, argued for plaintiffs-appellants.

ANDREW D. SKALE, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., of San Diego, California, argued for defendant-cross-appellant. With him on the brief was NATHAN R. HAMLER.

---

Before NEWMAN, RADER AND BRYSON, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* NEWMAN.

Dissenting opinion filed by *Circuit Judge* RADER.

NEWMAN, *Circuit Judge.*

Aspex Eyewear Inc. and Contour Optik, Inc. (together "Aspex") appeal the summary judgment of the United States District Court for the Southern District of New York, ruling that Aspex is equitably estopped from pursuing this infringement claim against Clariti Eyewear, Inc.[1] On cross-appeal, Clariti challenges the district court's denial of attorney fees under 35 U.S.C. §285.

## BACKGROUND

Aspex filed suit against Clariti in March 2007, alleging that Clariti's sales of its AirMag® brand eyeglass frames constitute willful infringement of U.S. Patent No. 6,109,747 ("the '747 patent") and No. RE37,545 ("the '545 patent"). The patents relate to eyeglass frames with magnetically attachable auxiliary lenses such as sunshades. After summary judgment briefing was completed, the infringement claim for the '545 patent was dismissed by stipulation. As for the '747 patent, the dismissal on the ground of equitable estoppel was based on the three years of silence after Aspex's contacts with Clariti in 2003 concerning infringement by the AirMag® products.

This is not the first litigation between these parties. In 1999, Aspex sued Clariti for infringement of U.S. Patent No. 5,568,207, the patent that was reissued as the '545 patent. Later that year, Clariti and Aspex entered into a consent judgment wherein Clariti acknowledged infringement of the

---

[1] *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, No. 07 Civ. 2373, 2008 WL 5049744 (S.D.N.Y. Nov. 26, 2008).

'207 patent by its magnetic eyewear designs, and agreed to a permanent injunction barring sales of those designs and any other magnetic eyewear that would infringe the '207 patent. Clariti did not again market a magnetic eyewear product until early 2003, when Clariti launched what it described as a new line of AirMag® eyeglass frames with magnetically attachable auxiliary lenses. On March 7, 2003 counsel for Aspex sent Clariti a letter identifying four Aspex patents, *viz.*, U.S. Patent Nos. 5,737,054; 6,012,811; 6,092,896; and the '545 patent, and stating:

> It is our understanding that some of the products sold by you may be covered by the claims of the above mentioned patents. In order to minimize further damage, we ask you to immediately confirm for us that you have stopped selling any frames, frame attachments or parts in violation of our rights under the patent[s]. We also ask you to supply us with the identity of the source of these goods and information concerning the number of pieces sold to date. We will then be in a position to reach a prompt and reasonable resolution of this situation.

> * * * *

> It has been our policy and continues to be our strong intention to fully and vigorously enforce our rights under the exclusive license to these magnetic frame attachments.

> * * * *

> We look forward to your immediate reply to this very urgent and serious matter.

J.A. 251–52. Three days later, on March 10, 2003, Aspex sent an almost identical letter as to the '747 patent. On

March 18, 2003 Clariti responded, stating that its policy is not to infringe any valid, enforceable patent, and requesting certain information to assist it in analyzing the Aspex patents, including file histories, assignment documents, and other documents likely to be readily available to Aspex. Clariti observed that the patents have a large number of claims and asked Aspex to specify "which claims you believe may cover Clariti's products by model number." J.A. 256. Aspex responded on May 12, 2003, as follows:

> We are in receipt of your letter dated March 18, 2003.
>
> For your review, enclosed please find courtesy copies of the file histories for U.S. Patent Nos. 6,012,811 and 6,737,054.
>
> Also, in response to numbered paragraph 7 of your letter, we have provided you with the following list of claims we believe cover the frames sold by your client:
>
> U.S. Patent No. 5,737,054: Claim 1; and
>
> U.S. Patent No. 6,012,811: Claims 1-4, 7, 9-14, 22-33.
>
> We have included more than enough information for your analysis of your client's infringement of U.S. Patent Nos. 6,012,811 and 5,737,054.
>
> We repeat, in order to minimize further damage, we ask you to immediately confirm for us that your client has stopped selling any frames, frame attachments or parts in violation of our client's rights under these patents. We also ask you to supply us with the identity of the source of these goods and information concerning the number of pieces sold to date. We will then be in a position to reach a prompt and reasonable resolution of this situation.
>
> We look forward to hearing from you.

J.A. 257–58. Neither the '545 nor the '747 patent was mentioned in this letter, and no claim of either patent was identified by Aspex as covering any Clariti product.

On June 26, 2003 Clariti responded, stating: "After reviewing the allegations raised in your letter, we believe that the products of Clariti Eyewear do not infringe any valid claims of the '811 or '054 patents." J.A. 259.

The record reports no further contact from Aspex until August 23, 2006, when Aspex wrote to Clariti as follows:

> It has come to our attention that your company is manufacturing a product called AirMag®. This product utilizes magnetic attraction on the two side extensions for attachment of the auxiliary frames to the primary frames. As such, it directly infringes our clients' patent rights with regard to the '747 patent. Specifically, your products are covered by claims of these patents, including but not limited to claims 10 and 12. A copy of the patent is enclosed for your reference.

J.A. 289. The parties exchanged additional letters concerning the '747 patent, Clariti refused to cease sales of the AirMag® products, and Aspex filed this suit on March 22, 2007.

Clariti then moved to dismiss Aspex's infringement claims on the ground of equitable estoppel based on the three years of silence. Clariti also moved for summary judgment of invalidity, and of unenforceability due to inequitable conduct during patent prosecution. Based on the asserted equitable estoppel and/or inequitable conduct, Clariti moved to have the case declared "exceptional" and attorney fees awarded under 35 U.S.C. §285. The district court granted Clariti's motion for dismissal on the ground of equitable estoppel, but ruled that the case was not "excep-

tional." Aspex and Clariti appeal the judgments adverse to each. We affirm the district court's rulings.

DISCUSSION

I

A summary judgment of equitable estoppel is reviewed for an abuse of discretion. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc). However, when there are disputed underlying factual elements, summary judgment is inappropriate unless the movant would prevail even on the non-movant's view of the facts. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The district court held that Aspex's conduct was misleading, in that Aspex in 2003 threatened an infringement suit under several patents, Clariti responded that its products did not infringe the claims of the '054 and '811 patents on which Aspex focused, and this response was followed by silence for three years as to the patents now in suit, while Clariti continued to market the accused products without objection. In the context of patent infringement, the three elements of equitable estoppel that must be established are: (1) the patentee, through misleading conduct, led the alleged infringer to reasonably believe that the patentee did not intend to enforce its patent against the infringer; (2) the alleged infringer relied on that conduct; and (3) due to its reliance, the alleged infringer would be materially prejudiced if the patentee were permitted to proceed with its charge of infringement. *Aukerman*, 960 F.2d at 1028. Misleading "conduct" may include specific statements, action, inaction, or silence when there was an obligation to speak. *Id.* In deciding whether to bar the suit on estoppel grounds, the court must consider all evidence relevant to the equities. *Id.* at 1043.

Aspex argues that misleading silence cannot be found unless an express charge of infringement was levied against a particular product. Aspex states that no particular product was identified by either Aspex or Clariti during the 2003 correspondence and that Aspex did not threaten an immediate suit for infringement, whereby its failure to sue could not produce an estoppel. In support Aspex cites *Meyers v. Asics Corp.*, 974 F.2d 1304 (Fed. Cir. 1992). However, this case does not support the position taken by Aspex. In *Meyers* the court explained that intentionally misleading silence arises when a patentee "threatened immediate or vigorous enforcement of its patent rights but then did nothing for an unreasonably long time." *Id.* (quoting *Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1464 (Fed. Cir. 1990)). *Meyers* did not hold that failure to identify specific products is a critical condition, when the accused infringer is sufficiently apprised of the products of the patentee's concern.

Aspex also seeks to distinguish *Scholle Corp. v. Blackhawk Molding Co.*, 133 F.3d 1469 (Fed. Cir. 1998), and *Wafer Shave, Inc. v. Gillette Co.*, 857 F. Supp. 112 (D. Mass. 1993), *aff'd*, 26 F.3d 140 (Fed. Cir. 1994) (Table). The district court cited *Scholle Corp.* and *Wafer Shave* for the proposition that a patentee's silence and inaction can be misleading in the context of the specific interaction between the parties. In *Scholle Corp.* the patentee had notified Blackhawk that one of Blackhawk's valved bottle caps infringed a Scholle patent. Blackhawk asked which claims were allegedly infringed, but received no response. Later Blackhawk provided Scholle with samples of a new cap design, and stated that it would consider the new product non-infringing unless Scholle advised otherwise. Scholle made no response, but three years later sued for infringement. Dismissal on grounds of equitable estoppel was sustained. Aspex argues that Clariti did not advise Aspex that it considered AirMag® a non-infringing alternative to the '747 patent, and thus that *Scholle Corp.* is inapplicable.

*Wafer Shave* involved a charge of infringement as to a particular Gillette product, with a cease and desist deadline included in the letter from Wafer Shave. Gillette refused to cease and desist, Wafer Shave did not explain why it considered the patent to be infringed, and Wafer Shave did not reassert infringement in later correspondence with Gillette. Wafer Shave filed suit three years and five months after its last charge of infringement and two years and nine months after the last communication with Gillette. The district court found equitable estoppel, and this court affirmed, *Wafer Shave, Inc. v. Gillette Co.*, 26 F.3d 140 (Fed. Cir. 1994) (Table). Aspex states that it presented no deadline in its letters.

Although Aspex notes factual differences among *Wafer Shave*, *Scholle Corp.*, and the instant case, equitable relief is not a matter of precise formula. Aspex's letters to Clariti of March 7 and 10, 2003 can fairly be understood as threats of suit for infringement, for Aspex stated its "understanding that some of the products sold by you may be covered by the claims of the above mentioned patents," and Aspex's "strong intention to fully and vigorously enforce our rights" in this "very urgent and serious matter." The ensuing silence is analogous to the silence in *Scholle Corp.* and in *Wafer Shave*.

Aspex argues that its letters did not threaten suit, and highlights the equivocal nature of the statements that its patents "may" cover "some" of Clariti's products. Aspex points to the letters' request that Clariti divulge sales information and the source of the accused goods, arguing that this shows that Aspex would not file suit until it received such information. The district court viewed the correspondence as a whole, and concluded that it was reasonably viewed by Clariti as a threat of an infringement suit, and not mitigated by the words "may" and "some."

With respect to the '747 patent, the Aspex letter of March 10, 2003 was specific to this patent, but in response to Clariti's request for the claims thought to be infringed, Aspex on May 12, 2003 identified only claims of the '054 and '811 patents. Whether this sequence is fairly viewed as a tacit withdrawal of the '747 patent, or as misleading silence with respect to the '747 patent, the result is the same, for it was reasonable for Clariti to infer that Aspex was not continuing the accusation of infringement as to the '747 patent.

Aspex points out that silence alone does not generate an estoppel, and that Clariti "must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action." *Aukerman*, 960 F.2d at 1042. It is correct that estoppel requires reliance. Clariti's position is that it expanded its AirMag® products in the belief that the '747 patent would not be enforced. Clariti's president, Dominique Yonemoto, declared that "following Aspex's May 2003 correspondence, she understood that Aspex was no longer accusing Clariti of infringing any claims of the '747 Patent." *Aspex*, 2008 WL 5049744, at *6. Ms. Yonemoto stated that "had Aspex filed a patent infringement suit against the AirMag® products [in March 2003], given the newness of the products and Clariti's lack of investment in them, Clariti would very likely have simply decided to stop selling the AirMag® products and pursued other business opportunities." Clariti Principal Br. 10 (quoting declaration). Clariti points to the May 12, 2003 letter from Aspex, which listed only claims of the '811 and '054 patents, and did not mention the '747 patent, which is the only patent here in suit. Clariti stresses that Aspex did not respond to Clariti's letter asserting non-infringement, and that Clariti thereafter expanded its business involving the AirMag® products: its 2003 AirMag® sales totaled less than $45,000; 2004 sales were over $150,000; and in 2005 and 2006 Clariti sold about $500,000 in AirMag® products.

Clariti promoted the products at the International Vision Expo and enlarged its sales force during this period.

Aspex argues that Clariti's testimony was speculative and conclusory, and does not suffice to support summary judgment of estoppel. However, to show reliance on Aspex's silence and inaction, Clariti need not prove precisely what alternative paths it would have taken, or that every marketing decision was based on reliance on Aspex's silence. It was undisputed that Clariti took into account Aspex's failure to pursue the '747 patent while the parties discussed the '811 and '054 patents. Clariti's president referred to the prior patent dispute between the parties, where Aspex did file an infringement suit. In that suit Clariti agreed to an injunction, and withdrew the accused products. Clariti's president stated that Clariti would likely have done the same with the AirMag® products if Aspex had filed suit in 2003 rather than withdraw into silence. We agree with the district court that reliance on Aspex's silence was shown.

Aspex argues that Clariti was not reasonable in relying on Aspex's silence to believe that the '747 and other patents would not be enforced and thus to continue to enlarge the AirMag® business. According to Aspex, Clariti should have known that Aspex might be delaying an infringement suit because suit was not economically worthwhile in 2003, at the low volume of AirMag® sales. Aspex takes this argument from *Aukerman,* where the accused infringer Chaides told the patentee Aukerman that the infringement claim was worth at most $200 to $300 a year. This court ruled that this "could lead one in Chaides' position to infer that Aukerman did not sue because the amount in issue was *de minimis,* not that Aukerman was abandoning its claim against Chaides for all time regardless of quantum." *Aukerman*, 960 F.2d at 1044. The court held that Aukerman was not necessarily estopped from bringing suit more than eight years later, when the infringer's business had grown.

The court explained that summary judgment of estoppel was not available, for the infringer might not reasonably be credited with believing that enlarged infringement could not be remedied. In the case at bar, neither party argued that the low volume of Clariti's initial sales was a factor in leading Aspex to drop the '747 patent from its correspondence in 2003, while the May 12, 2003 letter listed claims from the '811 and '054 patents. Clariti could reasonably have relied on this action in enlarging its business within the possible reach of the '747 patent, and in continuing to do so in the succeeding years of silence.

We also agree with the district court that Clariti's development of its AirMag® business, in reliance on Aspex's silence after its aggressive letters, represents a significant change in economic position and constitutes material prejudice sufficient to support equitable estoppel. Clariti need not show a total loss of value in order to show material prejudice. Prejudice may be shown by a change of economic position flowing from actions taken or not taken by the patentee. *See ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1065 (Fed. Cir. 1995) ("[C]ases in which economic prejudice has been found lacking did not so hold because of a lack of capital investments, but, rather, because the alleged infringer failed to prove that their increased expenditures, i.e., on marketing and development, were in any way related to actions taken by the patentee."). Although Aspex argues that Clariti continued to expand this business after Aspex filed suit in 2007 for infringement of the '747 patent, and thus that material prejudice should not be attributed to Aspex's period of silence, the district court did not err in determining prejudice based on Clariti's commercial activities undertaken and expanded during the period of silence.

In *Aukerman* the court explained that "the trial court must, even where the three elements of equitable estoppel

are established, take into consideration any other evidence and facts respecting the equities of the parties in exercising its discretion and deciding whether to allow the defense of equitable estoppel to bar the suit." 960 F.2d at 1043. Aspex argues that the trial court did not properly consider Clariti's own egregious conduct, for Clariti continued its sales of the AirMag® products after receipt of Aspex's letters in 2003, and without obtaining advice of counsel as to the '747 patent. Aspex states that this shows willful infringement of the '747 patent, for only the passage of time gave weight to Aspex's silence.

The district court stated that this court's ruling in *In re Seagate Technolgy, LLC*, 497 F.3d 1360 (Fed. Cir. 2007), made clear that there is no automatic obligation to obtain or present an exculpatory opinion of counsel in order to avoid "willful" infringement. Although this ruling is not controlling as to estoppel, for this equitable question the court could have given weight to its conclusion that the record contained no evidence of egregious copying or willful infringement. The district court further reasoned that in light of Aspex's May 12, 2003 letter, which did not mention the '747 patent and identified no '747 claims as infringed, Clariti had no reason to think that Aspex still believed it infringed the '747 patent, and was under no duty to cease its activities based solely on the initial letter from Aspex and the abandoned charge of infringement as to the '747 patent.

After Aspex reopened discussion in 2006, Clariti received from the manufacturer of the AirMag® products an opinion of counsel on the validity of the '747 patent. Aspex points out that Clariti relied on this opinion in the district court, and argues that Clariti's failure to obtain an opinion earlier constitutes evidence of Clariti's willful infringement. Aspex argues that where a defendant chooses to rely on an opinion of counsel to negate a charge of willful infringement, the timing of the opinion can be considered in the totality of

circumstances. Aspex argues that in view of the 2003 letters and Clariti's knowledge of Aspex's enforcement of its patents in the 1999 litigation between them, Clariti should have stopped selling the AirMag® products or obtained an opinion of counsel in 2003.

We agree that the timing as well as the content of an opinion of counsel may be relevant to the issue of willful infringement, for timely consultation with counsel may be evidence that an infringer did not engage in objectively reckless behavior. *See Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1339 (Fed. Cir. 2008) ("Thus a competent opinion of counsel concluding either that DirecTV did not infringe the '505 patent *or* that it was invalid would provide a sufficient basis for DirecTV to proceed without engaging in objectively reckless behavior with respect to the '505 patent."). However, as the district court explained, the May 12, 2003 letter from Aspex no longer referred to the '747 patent as potentially infringed, and Clariti could reasonably have concluded that Aspex would not sue on the '747 patent. Thus Clariti cannot have been objectively reckless in not obtaining an opinion of counsel as to the '747 patent.

The elements of equitable estoppel were established without material factual dispute, and the district court did not abuse its discretion in weighing the equities. We affirm the district court's ruling that Aspex is equitably estopped from suing Clariti for infringement of the '747 patent.

II

On cross-appeal, Clariti argues that this case should be declared exceptional under 35 U.S.C. §285, for the purpose of awarding attorney fees. The district court denied the request.

A case may be found exceptional in terms of §285 when there has been some material inappropriate conduct related

to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or other major impropriety. *See Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 455 (Fed. Cir. 1985) (collecting cases); *Beckman Instruments, Inc., v. LKB Produkter AB*, 892 F.2d 1547, 1551–52 (Fed. Cir. 1989) (affirming exceptional case determination based on a strategy of vexatious litigation activity). Even in the absence of misconduct in the litigation or in securing the patent, attorney fees may be assessed when the litigation was objectively baseless and was brought in subjective bad faith. *Brooks Furniture Mfg., Inc. v. Dutailer Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) (reversing exceptional case finding based on lack of subjective bad faith, citing *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60–61 (1993) (holding that litigation cannot be deprived of immunity under the *Noerr-Pennington* doctrine as a sham unless the litigation is objectively baseless and brought in subjective bad faith)); *see also ICU Medical, Inc. v. Alaris Medical Sys., Inc.*, 558 F.3d 1368, 1379–80 (Fed. Cir. 2009) (affirming attorney fee award on the basis of litigation misconduct and objectively baseless litigation brought in bad faith). The party seeking attorney fees under §285 must establish, by clear and convincing evidence, that the case is exceptional. *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003). This court reviews the factual determination of whether a case is exceptional for clear error. *Id.* at 1328. When a case is found to be exceptional, the award of attorney fees is within the discretion of the district court, and is reviewed accordingly. *See Serio-US Indus. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1321 (Fed. Cir. 2006) (abuse of discretion standard).

Section 285 is an exception to the "American Rule" concerning attorney fees, and is limited to circumstances in

which the award of fees is necessary "to prevent a gross injustice." *Forest Labs.*, 339 F.3d at 1329. In *Forest Labs.* the accused infringer argued that the patentee's misleading conduct leading to a successful charge of equitable estoppel was in bad faith, and that this made the case exceptional; this court held that §285 does not reach a patentee's bad-faith or misleading business conduct toward an accused infringer before litigation. *Id.* Clariti argues that this case is different because Clariti specifically warned Aspex in 2006, after Aspex broke its three-year silence, that an attempt at litigation would be equitably estopped, yet Aspex filed suit anyway.

While we have affirmed the district court's ruling of equitable estoppel, the warning by Clariti that it would raise this defense does not convert Aspex's action into one of bad faith. Defeat of a litigation position, even on summary judgment, does not warrant an automatic finding that the suit was objectively baseless; all of the circumstances must be considered. The district court did not clearly err in ruling that the act of bringing this suit, under the circumstances that existed, did not produce an exceptional case in terms of §285, and does not warrant the award of attorney fees.

## III

Clariti also argues that the case is exceptional based on inequitable conduct by Aspex in procuring the '747 patent. Inequitable conduct in obtaining a patent may, depending on the circumstances, support the award of attorney fees. *See, e.g.*, *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370 (Fed. Cir. 2001) (affirming finding of exceptional case based on inequitable conduct); *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1215 (Fed. Cir. 1987) ("[I]t has not been held that every case of proven inequitable conduct must result in an automatic attorney fee award.").

Clariti argues that the inventor of the '747 patent, David Chao, and his assignee, co-defendant Contour Optik, Inc., knew of a material reference and intentionally withheld it from the Patent and Trademark Office. The reference is a patent application filed by Julie Madison of Manhattan Design Studio. The Madison application was filed on April 18, 1997, ten days before Chao filed the '747 application, and it issued as U.S. Patent No. 6,149,269 ("the '269 patent") shortly after the '747 patent issued. Mr. Chao testified that he became aware of the Madison application while it was pending, in late 1996 or early 1997, and was "very upset" because he had given some technical drawings to Ms. Madison and he believed that she had used these drawings in her patent application. Neither Mr. Chao nor his assignee Contour Optik brought the Madison application to the attention of the PTO during prosecution of the '747 application. Clariti later requested reexamination of the issued '747 patent on the basis of Ms. Madison's issued '269 patent, and the '747 claims were confirmed after Mr. Chao "swore behind" the Madison application.

Clariti's argument for inequitable conduct is that the Madison application was material because the PTO granted reexamination of the '747 patent, and that Mr. Chao should have described the Madison application to the examiner during pendency of the '747 application. Clariti argues that Aspex, the '747 patent's exclusive licensee, committed inequitable conduct independent of this lapse by the inventor and the assignee of the '747 patent, because Aspex had purchased the assets of Manhattan Design Studio, including the Madison application, before issuance of the '747 patent. Clariti states that Aspex should have required disclosure of the Madison application to the examiner handling the '747 application. Aspex responds that Clariti has not identified any person at Aspex who had a copy of the Madison application, knew of its contents, and knew of any possible materiality in relation to the '747 application. Aspex also points

out that there is no evidence that Mr. Chao or anyone at Contour Optik saw the Madison application or was aware of its contents during the pendency of the '747 application.

"Inequitable conduct resides in failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence." *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988). Intent to deceive cannot be inferred from even a high degree of materiality, but must be separately proved by clear and convincing evidence. *Id.* at 876; *see Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008) ("[T]he fact that information later found material was not disclosed cannot, by itself, satisfy the deceptive intent element of inequitable conduct."). Mistake or negligence, even gross negligence, does not support a ruling of inequitable conduct. *Kingsdown*, 863 F.2d at 876 (en banc in relevant part). When both materiality and deceptive intent have been established, the district court determines, in the court's discretion, whether inequitable conduct has occurred; appellate review is on the basis of whether this discretion has been abused. *See id.* ("As an equitable issue, inequitable conduct is committed to the discretion of the trial court and is reviewed by this court under an abuse of discretion standard. We, accordingly, will not simply substitute our judgment for that of the trial court in relation to inequitable conduct.").

The district court did not hold a full trial on inequitable conduct, because the summary judgment of equitable estoppel ended the litigation. Clariti argues that the district court clearly erred because it did not fully develop and find all the facts that might show that this case should be declared exceptional. However, having resolved the litigation, and especially in the absence of a prima facie case showing

clear and convincing evidence of inequitable conduct, the court was not required to pursue the fee-shifting premises. As in *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1366–67 (Fed. Cir. 2004), "the district court was justified in not requiring a full trial on the issue of inequitable conduct as part of the attorney fee motion or in entering detailed findings of fact and conclusions of law on the issue." We agree with the district court that the circumstances here presented do not meet the threshold levels of materiality and intent necessary to establish inequitable conduct by clear and convincing evidence. Mr. Chao's concern about Ms. Madison's possible use of his information does not impart materiality and deceptive intent to the prosecution of the '747 application. No evidence of deceptive intent was presented. Because the elements of inequitable conduct were not met, the district court did not abuse its discretion in ruling that inequitable conduct in the PTO had not been shown, and in declining to award attorney fees based on prosecution of the '747 application.

The rulings of the district court are

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**ASPEX EYEWEAR INC.
AND CONTOUR OPTIK, INC.,**
*Plaintiffs-Appellants,*

**v.**

**CLARITI EYEWEAR, INC.,**
*Defendant-Cross-Appellant.*

---

2009-1147, -1162

---

Appeals from the United States District Court for the Southern District of New York in case no. 07-CV-2373, Judge Denny Chin.

---

RADER, *Circuit Judge*, dissenting.

Because this court with this opinion expands the doctrine of equitable estoppel beyond its own precedent, I must respectfully dissent.

"Silence alone will not create an estoppel unless there was a clear duty to speak or somehow the patentee's continued silence reinforces the defendant's inference from the plaintiff's known acquiescence that the defendant will be unmolested. . . . [O]n summary judgment, such inference must be the *only* possible inference from the evidence." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020,

1043–44 (Fed. Cir. 1992) (en banc) (internal citations omitted) (emphasis in original). In *Aukerman*, this court held that because the district court could draw different inferences from the correspondence between the parties, the district court clearly and impermissibly drew an unfavorable inference against the patentee in granting summary judgment. *Id.*; *see also Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1295 (Fed. Cir. 1992) (holding that "mere silence must be accompanied by some *other* factor which indicates that the silence was sufficiently misleading as to amount to bad faith" (emphasis in original)). The patentee's silence "must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *Aukerman*, 960 F.2d at 1042. This court held that even an invitation to sue made by the defendant did not create a clear duty to speak for the patentee. *See id.* at 1026–27.

In this case, Aspex sent Clariti a letter that does not create the clear duty required by *Aukerman*. Notably absent is a threat of "immediate and vigorous enforcement of its patent rights." *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1574 (Fed. Cir. 1987) (holding that "[i]n the cases that have applied intentionally misleading silence in the patent infringement context, a patentee threatened immediate and vigorous enforcement of its patent right but then did nothing for an unreasonably long time"). The letter merely informs Clariti of the patents, points to Aspex's patent enforcement policy, and requests additional information from Clariti to permit Aspex to evaluate its position. Aspex made no outright "threats of litigation." *Meyers v. Asics Corp.*, 974 F.2d 1304, 1309 (Fed. Cir. 1992); *see also Hemstreet*, 972 F.2d at 1292 (finding a genuine issue of fact as to whether patentee engaged in misleading conduct because "[t]he letter did not threaten immediate litigation, nor did it provide any deadline for response"). Also, Aspex did not

accuse specific Clariti products. *See Aukerman*, 960 F.2d at 1042 ("In the most common situation, the patentee *specifically* objects to the activities currently asserted as infringement in the suit . . . ." (emphasis added)); *see also Meyers*, 974 F.2d at 1305 (finding no misleading conduct even where patentee sent letter to defendant asserting that several of defendant's product models infringed its patents).

Licensing negotiations in which a patentee asserts infringement do not create estoppel. *See, e.g.*, *Meyers*, 974 F.2d at 1308–09 (holding that "a suggestion of infringement coupled with an offer to license followed by silence [does not] suffice to establish equitable estoppel"). An "invitation to enter into a business relationship [that] neither threatens litigation nor conveys the impression that the [patentee] would acquiesce in [the defendant's] alleged infringement" does not create a clear duty to speak. *Id.* at 1309. In this case, one could find that the letters from Aspex were simply requests for more information to facilitate an informed decision amongst the options of licensing, litigation, or abandonment of the infringement claim. In a case with little evidence beyond the actual letters sent by the parties, the district court should avoid premature conclusions that leap to the drastic punishment of barring all relief.

This court does not justify its conclusion that Aspex explicitly abandoned its infringement claim with respect to the '747 patent. After all, Aspex did not even mention the patent in its May 12, 2003 letter. Moreover, Clariti did not give Aspex the information repeatedly requested in Aspex's March 7, March 10, and May 12, 2003 letters. Thus, Aspex did not even have the information it requested to make an informed decision about a patent infringement claim on the '747 patent. In each of its earlier three letters, Aspex stated that after it received the information from Clariti, it would "then be in a position to reach a prompt and reasonable resolution of this situation." This statement put Clariti

on notice that Aspex would not even consider filing suit until it received the information, and therefore the ensuing silence was not misleading.

This court mistakenly relies on *Scholle Corp. v. Blackhawk Molding Co.*, 133 F.3d 1469 (Fed. Cir. 1998) and *Wafer Shave, Inc. v. The Gillette Co.*, 857 F. Supp. 112 (D. Mass. 1993), *aff'd*, 26 F.3d 140 (Fed. Cir. 1994) to establish misleading conduct. In *Scholle*, the accused infringer made a design-around product during litigation in an effort to avoid future infringement. 133 F.3d at 1470. The defendant presented samples of the design-around product to the patentee and informed the patentee that it would consider the design-around product non-infringing unless the patentee advised it otherwise. The patentee gave no response to the defendant's inquiry. *Id.* Following the defendant's inquiry, the parties had numerous discussions regarding the patent and even a possible merger. *Id.* at 1471. The patentee knew of the defendant's position in the market and the rapidly growing sales of the design-around product. *Id.* In those years of discussions, the patentee never suggested that it might consider the design-around product to infringe its patent. *Id.* Years later, the patentee sued the defendant for infringement by the design-around product. *Id.* at 1471–72. In *Scholle*, this court found that the discussions that the parties had over the years was "cooperative behavior [that], in light of [the patentee's] previous threats to sue, created a reasonable inference that [the patentee] considered the [product] a non-infringing design-around product and did not intend to sue." *Id.* at 1472. In other words, the "course of dealing" and "extensive contact" between the parties coupled with the patentee's inaction created the estoppel. *Id.* at 1472, 1473.

This case does not present this extended course of dealing. Aspex requested information from Clariti and informed it of the patent and basic patent law. In addition, Clariti

did not present Aspex with a design-around product and ask whether that product infringed.

In *Wafer Shave*, the patentee accused Gillette's "Atra Plus" product of infringing its patent. 857 F. Supp. at 117. In the same communication, the patentee demanded that Gillette "cease and desist from making, using, or selling" the product and threatened to commence litigation within fourteen days of the communication unless Gillette stopped infringing. *Id.* at 117, 120. Independent evidence also established that Wafer Shave intended to threaten litigation. *Id.* at 120. Following this communication, Wafer Shave attempted to sell or license the patent to Gillette without reasserting any claim of patent infringement. Based on the specific threat of litigation, the "cease and desist" demand, the deadline to respond before Waver Shave would initiate suit, and the subsequent course of dealing with no mention of infringement, the district court found that Wafer Shave's conduct was misleading. *Id.* Aspex's communications with Clariti did not rise to the level of those in *Wafer Shave*. Aspex simply informed Clariti that it "may" infringe some of its patents and requested information.

To my eyes, this record also lacks any material prejudice. Prejudice hinges on any changes in economic position that Clariti undertook during the period of delay due to the actions taken or not taken by Aspex. *See Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358,1371 (Fed. Cir. 2001). Although "increasing sales . . . may constitute economic prejudice," they alone are not always sufficient to prove that prejudice. *See ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1065 (Fed. Cir. 1995).

Marketing products, which is all Clariti did here, generally does not require the same kind of investment as developing and manufacturing products. For example, in *ABB*,

the accused infringer expended resources, which a marketing-only company would not, on procuring additional patents in the field of the patent-in-suit and developing the technology. *Id.* Similarly, in *Scholle*, the accused infringer invested approximately $700,000 in tooling and machinery, which a marketing-only company would not. 133 F.3d at 1471. In this case, the record leaves many questions about economic prejudice because Clariti did not manufacture any products but simply marketed them.

In addition, the record does not really show that Aspex's silence contributed at all to the marketing expenses, the increases in sales force, and the trademark protection costs asserted as "prejudice." The marketing expenses were minimal, $12,500 per year from 2004 to 2006. From 2003 to 2006, Clariti hired sixteen new sales persons, but it is unclear how many sales persons were hired due to increased sales of AirMag® as opposed to Clariti's over one hundred other products. In addition, the trademark registration shows that the AirMag® mark covers a broad range of eyewear products, including those unrelated to Aspex's invention. Even the district court stated that there was a "possible factual dispute concern[ing] the extent of Clariti's economic prejudice . . . ." *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, No. 07 Civ. 2373(DC), 2008 WL 5049744, at *7 (S.D.N.Y. Nov. 26, 2008).

Because of these lingering questions of fact, this case was not ripe for summary judgment. Affirming the grant of summary judgment expands the equitable estoppel doctrine beyond this court's precedent with respect to both misleading conduct and material prejudice.