# United States Court of Appeals
# for the Federal Circuit

---

**HIGH POINT SARL,**
*Plaintiff-Appellant*

**v.**

**SPRINT NEXTEL CORPORATION, SPRINT
SPECTRUM, LP, SPRINTCOM, INC., SPRINT
COMMUNICATIONS COMPANY, L.P., SPRINT
SOLUTIONS, INC., APC PCS, LLC, APC REALTY
AND EQUIPMENT COMPANY, LLC, STC TWO LLC,
ALCATEL-LUCENT USA INC.,**
*Defendants-Appellees*

---

2015-1298

---

Appeal from the United States District Court for the District of Kansas in No. 2:09-cv-02269-CM-TJJ, Judge Carlos Murguia.

---

Decided: April 5, 2016

---

MARTIN J. BLACK, Dechert LLP, Philadelphia, PA, argued for plaintiff-appellant. Also represented by DEREK J. BRADER; ROBERT RHOAD, Princeton, NJ.

ERIC J. LOBENFELD, Hogan Lovells US LLP, New York, NY, argued for defendants-appellees Sprint Nextel Corporation, et al. Also represented by THEODORE JOHN

MLYNAR, NICOLE NUSSBAUM, IRA J. SCHAEFER, THOMAS SCHMIDT.

DAVID A. NELSON, Quinn Emanuel Urquhart & Sullivan, LLP, Chicago, IL, for defendant-appellee Alcatel-Lucent USA Inc. Also represented by STEPHEN A. SWEDLOW.

———————————

Before REYNA, MAYER, and CHEN, *Circuit Judges.*

REYNA, *Circuit Judge.*

High Point SARL ("High Point") appeals from the district court's grant of summary judgment that equitable estoppel and laches preclude prosecution of this lawsuit. High Point's predecessors-in-interest to the patents-in-suit helped Defendants build a communications network through licensed and unlicensed activity for over a decade. High Point acquired rights to the patents-in-suit and asserted them for the first time against Defendants after more than six years of unlicensed activity. We hold that equitable estoppel applies in this instance and High Point is barred from bringing this case against Defendants. We *affirm* the district court's judgment and decline to address the remaining issue of laches.

## BACKGROUND

In the early 1990s, AT&T's Bell Labs developed and patented United States Patent Nos. 5,195,090; 5,195,091; 5,305,308; and 5,184,347 (collectively, the "patents-in-suit"). The patents-in-suit cover the transfer of packetized voice traffic between cellular base stations and switching centers. The patents-in-suit issued between 1993 and 1994, and expired in 2011. In 1996, AT&T spun off Lucent Technologies ("Lucent"), one of its corporate affiliates, as an independent company and assigned the patents-in-suit to Lucent. In September 2000, Lucent

reorganized and spun off part of its business, including the patents-in-suit, to Avaya, Inc. ("Avaya").[1]

In March 2008, Avaya sold the patents-in-suit for $2 million to High Point, reserving an interest in any proceeds High Point obtained through litigation. J.A. 21850–52. High Point is based in Luxembourg and does not practice the patents-in-suit. Within three days of taking ownership of the patents-in-suit, High Point began sending demand letters asserting infringement. Sprint Nextel Corporation and its affiliates (collectively, "Sprint") were among many to receive a demand letter from High Point.

Past Conduct Among the Parties

As early as 1995, Sprint decided to build a network based on a new technology called Code Division Multiple Access ("CDMA"). CDMA allows a large number of cellphone users to share the same radio frequency by associating each user with a single code. CDMA is now standard and used around the world. In September 1995, Sprint met with several vendors, including AT&T, Nortel, and Motorola, to discuss interoperability standards for its nascent network.

To build the nationwide CDMA network, Sprint contracted with several vendors to supply equipment for the network. In 1996, Sprint executed a supply agreement with Nortel for equipment for the CDMA infrastructure. In 1997, Sprint executed a similar agreement with Motorola. In 1996 and 1999, AT&T (and later Lucent as AT&T's successor) agreed to supply Sprint with equipment. Each of the supply agreements with AT&T and

---

[1]    In *High Point SARL v. T-Mobile USA, Inc.*, No. 2015-1235, 2016 U.S. App. LEXIS 2734 (Fed. Cir. Feb. 18, 2016), High Point asserted the same patents, and we affirmed the district court's dismissal of the case on grounds of exhaustion.

Lucent had a limited license for several patents, including the patents-in-suit. The agreements required certain standards and specifications to be met by the vendors so the equipment could be interoperable with other vendors' equipment. *See* J.A. 18769.

In 1998, Sprint and Lucent entered into a memorandum of understanding about the concept of multi-vendor interoperability within Sprint's CDMA network. In that memorandum, Lucent represented a desire to work with Sprint and other vendors to develop interoperability standards. That same year, Lucent entered into a similar licensing arrangement with Nortel, which was later cross-licensed to Sprint. In 2000, Sprint and three of its infrastructure vendors (Lucent, Nortel, and Motorola) signed another agreement about interoperability. That agreement did not grant Sprint, or any of Sprint's vendors, rights under the patents-in-suit, but the agreement manifested each vendor's commitment to develop jointly interoperability standards, including an understanding that the equipment should work among and between vendors. J.A. 18727. Avaya succeeded in interest to Lucent in 2000, but Avaya did not discuss with any of the involved parties the patents-in-suit in an infringement context.

At the inception of the Sprint network, all Sprint zones in the network were covered by a license, either by the license contained in the Lucent-Sprint supply agreement (which applied to Sprint's use of Lucent equipment) or a cross-license that originated from an agreement with Lucent and Nortel (which applied to Sprint's use of Nortel equipment). As the Sprint network grew, Sprint began to purchase and use unlicensed equipment supplied by several vendors.

In 2001, Samsung won a competitive bidding process—over Lucent, Motorola, and Nortel—to support Sprint's operations in Puerto Rico. Bidding began around

1999, when Lucent was still patentee. J.A. 18260. It is undisputed that the Puerto Rican operation involved the installation of unlicensed infrastructure provided by Samsung.

In 2004, Sprint began upgrading some of the Lucent equipment with equipment provided by Motorola. Motorola was not a party to the Lucent-Sprint licensing agreement.

In 2006, Alcatel purchased Lucent, naming the subsidiary Alcatel-Lucent USA, Inc. ("Alcatel-Lucent"). According to High Point, that act terminated any license as to Sprint's use of Lucent equipment.

In 2008, Nortel began selling equipment to Sprint and others. At that point, Nortel was no longer a licensee to the patents-in-suit.

The record does not reflect that at any time prior to December 2008, High Point, Avaya, or Lucent raised any infringement concerns.

Procedural History

On December 29, 2008, High Point sued Defendants in the Eastern District of Virginia for patent infringement. High Point accused Defendants of violating the licensing agreements and alleged that the Sprint CDMA network operated through the combination of licensed and unlicensed equipment to facilitate the transmission of voice call traffic in an infringing manner. In May 2009, the case was transferred to the District of Kansas. While the lawsuit was pending, Sprint continued to build its network by, among other things, entering into a supply agreement with Alcatel-Lucent under terms similar to those entered into with Sprint's prior vendors. On February 8, 2013, Alcatel-Lucent intervened as a defendant.

Defendants moved for summary judgment on a variety of issues, including laches and equitable estoppel. On

December 11, 2014, after reviewing a special master's findings and recommendation, the district court granted summary judgment in favor of Defendants that laches and equitable estoppel barred the lawsuit. The district court reasoned that, by waiting and not asserting any patent rights, Lucent and then Avaya placed Sprint in detrimental reliance. That silence, while Sprint actively engaged in the establishment of the CDMA network induced through the sale, purchase, and licensing of equipment for that network, caused Sprint economic and evidentiary prejudice. On January 21, 2015, the district court entered final judgment dismissing High Point's claims.

High Point appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## STANDARD OF REVIEW

We review for abuse of discretion decisions on equitable estoppel rendered on summary judgment unless genuine issues of material fact preclude summary judgment. *Pei-Herng Hor v. Ching-Wu Chu*, 699 F.3d 1331, 1334 (Fed. Cir. 2012) (citing *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1349 (Fed. Cir. 2009)). We review evidentiary rulings under the law of the regional circuit in which the district court sits, which in this case is the Tenth Circuit. *Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1381 (Fed. Cir. 2003). The Tenth Circuit reviews evidentiary rulings for abuse of discretion. *K-Tec, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1373 (Fed. Cir. 2012) (citation omitted). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 n.2 (2014) (citation omitted).

DISCUSSION

High Point asserts that equitable estoppel is an extraordinary remedy that should not apply under these facts.  High Point contends that a patentee is not obligated to investigate the technical details of its competitor's equipment and then match those specifications to its patent portfolio; commercial realities dictate that equitable estoppel should not apply when business transactions are complex and varied.

High Point further suggests that the district court ignored recent case law that required Sprint to demonstrate bad faith through the patentee's course of conduct.  According to High Point, silence alone is not enough when the parties are sophisticated business partners and there is no showing of bad faith.  High Point asserts that under the licensing agreements, it could not in any event assert infringement until 2004 for the Motorola equipment (after the Motorola updates to some of the Lucent equipment), 2006 for the Lucent equipment (after Alcatel acquired Lucent), and 2008 for the Nortel equipment (after the cross-license was no longer in effect).

High Point urges that we conclude that the district court improperly drew inferences from disputed facts that should have obviated summary judgment.  According to High Point, the district court effectively placed the burden on High Point to disprove equitable estoppel by using phrases like the "most sensible inference" and "most persuasive."  The evidence shows that Avaya was a new company in 2000 and could not have known about the infringement claim until it had an opportunity to evaluate its patent portfolio.  High Point further asserts that Defendants' reliance on interoperability is a red herring because the equipment accused in this case was not subject to any interoperability project.  High Point claims that Sprint never implemented the CDMA interoperability project.

High Point asserts that Sprint cannot claim reliance because it was not aware of the patents, and there is no evidence that Sprint would have acted differently had it known about a potential lawsuit. High Point challenges the admissibility of testimony by two Sprint employees because those employees are not credible and were not involved in strategic decision-making or the projects at issue. High Point concludes that both economic and evidentiary prejudice are not apparent from the record and, at best, any perceived prejudice is a fact issue better suited for trial.

Defendants counter that there is no genuine dispute of material fact that High Point should be equitably estopped from pursuing the lawsuit. Defendants assert that High Point's predecessors (AT&T, Lucent, and Avaya) communicated, both by action and silence, that Sprint would not be disturbed in building out a packet-based CDMA network with equipment from multiple vendors. Defendants argue that High Point's predecessors-in-interest were in a position to sue as early as 1996, when Sprint entered into a supply agreement with Nortel and later with Motorola in 1997. Additionally, High Point's predecessors expressly agreed, on multiple occasions, to help Sprint integrate the equipment from other vendors. Defendants point to a 1998 letter from Lucent's Vice President, stating that Sprint "continue[d] to place a high value on the development of an interoperable CDMA" network, and "share[d] Lucent's desire to document our respective commitments towards that goal in a manner consistent with that of Motorola and Nortel." J.A. 21063. Defendants further highlight the 1998 memorandum of interoperability entered into by Sprint and Lucent as well as a similar agreement in 2000 involving Sprint, Lucent, Motorola, and Nortel.

Defendants contend that Sprint's investment in interoperable CDMA infrastructure underscores detrimental reliance on the conduct of and inaction by High

Point's predecessors-in-interest. Defendants represent that Sprint had several non-infringing alternatives it could have pursued if AT&T, Lucent, or Avaya had indicated any intent to demand royalties or sue for infringement of the patents-in-suit. Sprint's purchase of equipment from multiple vendors is further indication of its desire for an interoperable network.

Defendants claim both economic and evidentiary prejudice. Defendants note that Sprint continued its capital investment from the late 1990s until the time of the lawsuit and beyond. Even accepting High Point's infringement start date of 2001, when Sprint installed the Samsung equipment in Puerto Rico, Sprint had invested billions of dollars in infrastructure before this lawsuit was filed in 2008. As to evidentiary concerns, Defendants point to the time lapse resulting in loss of evidence relevant to inventorship and Defendants' defenses. For example, Defendants' motion for summary judgment on failure to join the correct inventor was dismissed for lack of evidence. J.A. 75.

We hold that the district court did not abuse its discretion in determining that equitable estoppel precludes High Point from bringing this case against Defendants. Three elements must be established for equitable estoppel to bar a patentee's suit:

> (1) the patentee, through misleading conduct (or silence), leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relies on that conduct; and (3) the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

*Radio Sys. Corp. v. Tom Lalor & Bumper Boy, Inc.*, 709 F.3d 1124, 1130 (Fed. Cir. 2013) (citation omitted). Although certain facts remain contested in this case, resolu-

tion of equitable estoppel rests on a record without material dispute.

First, we conclude that High Point's predecessors' misleading course of conduct caused Sprint to reasonably infer that they would not assert the patents-in-suit while Sprint purchased unlicensed infrastructure to build its network. Misleading conduct occurs when the alleged infringer is aware of the patentee or its patents, and knows or can reasonably infer that the patentee has known of the allegedly infringing activities for some time. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1042 (Fed. Cir. 1992) (en banc). If the record indicates silence alone, "mere silence must be accompanied by some *other* factor which indicates that the silence was sufficiently misleading as to amount to bad faith." *Hemstreet v. Comput. Entry Sys. Corp.*, 972 F.2d 1290, 1295 (Fed. Cir. 1992) (emphasis in original); *see also Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 (Fed. Cir. 1992).

The evidence in this case shows both silence and active conduct. There is no dispute that the licensing activity between Sprint and High Point's predecessors-in-interest covered the patents-in-suit. Although the supply agreement had several terms and conditions, among those was the identification of the patents-in-suit and what Sprint could do with those patents. At varying points (2001 for the Samsung equipment, 2004 for the Motorola equipment, 2006 for the Lucent equipment, and 2008 for the Nortel equipment), those licenses lapsed or were no longer in effect prior to the lawsuit being filed.

The evidence demonstrates that AT&T, Lucent, and Avaya were aware of Sprint's intent to create CDMA infrastructure with equipment supplied from various vendors. Sprint began entering commercial transactions with several vendors in the late 1990s for, what was at the time, unlicensed infrastructure. And by 2001, Samsung had agreed to provide Sprint with unlicensed CDMA

infrastructure. Although High Point suggests that it was not aware of the scope of the Samsung project in Puerto Rico, High Point fails to present any evidence to rebut Defendants' showing that the same allegedly infringing activity was occurring in Puerto Rico. *Yufa v. Lockheed Martin Corp.*, 575 F. App'x 881, 887 (Fed. Cir. 2014) (rejecting attorney argument as evidence); *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005) (same). Lucent—as the then-patentee—was on notice of the unlicensed activity because it bid on the Puerto Rican project in 1999 and lost to Samsung, an entity not covered by Lucent's licenses. High Point also bases its current infringement allegations on public information about that project; that evidence demonstrates that for the Puerto Rican project to operate, interoperability with other facets of Sprint's network was necessary. It is undisputed that the parties are sophisticated competitors that were aware of unlicensed activity occurring as early as 2001, activity that increased over time.

There is no genuine dispute of material fact that High Point's predecessors failed to challenge Sprint when its activity fell outside the licenses as early as 2001. The effect of equitable estoppel is "a license to use the invention that extends throughout the life of the patent." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 807 F.3d 1311, 1332 (Fed. Cir. 2015) (en banc). That effect can arise when a predecessor's conduct is imputed to its successors-in-interest. *Cf. Radio Sys. Corp.*, 709 F.3d at 1131 (citing *Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 839 F.2d 1544, 1555 (Fed. Cir. 1988)). High Point's predecessors were not only silent as to infringement concerns, they were actively involved in licensing arrangements involving the patents, discussing interoperability with other potentially infringing vendors, and continuing business relationships, including with respect to the unlicensed activity in Puerto Rico. Although High

Point suggests that evidence of bad faith must be present to establish intent, we have never held that bad faith is the *sine qua non* of intent, especially here where the facts demonstrate the predecessors' active engagement in building Sprint's CDMA network. *See Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1311 (Fed. Cir. 2010) (affirming the district court's determination of equitable estoppel and noting that "equitable relief is not a matter of precise formula"). The claim that Avaya or Lucent were nascent businesses with limited capacity to exercise their rights is not supported by the evidence and is contrary to their active participation in establishing Sprint's network.

Second, we agree with the district court that Defendants detrimentally relied on the conduct of High Point's predecessors. The district court did not abuse its discretion in admitting and crediting the unrebutted deposition testimony of Sprint's witnesses, indicating that Sprint had several options when building its network and that Sprint would have acted differently if the threat of litigation was a possibility. Sprint offered testimony from its in-house patent counsel as well as its outside counsel who negotiated the CDMA supply contracts with Lucent, Nortel, Motorola, and Samsung. The witnesses testified that Sprint had many conversations about building its network and considered using a different system (e.g., Global System Mobile). The witnesses discussed how Sprint also considered purchasing equipment solely from AT&T and Lucent, or purchasing equipment from licensed vendors entirely. The witnesses observed that Sprint could have retrofitted the potentially infringing infrastructure with sufficient notice of possible infringement. Those witnesses were deposed and testified based on their unique roles in rendering advice as legal counsel.

High Point fails to rebut with evidence that Sprint's proposed solutions would have been unrealistic or infeasible. *Aspex Eyewear*, 605 F.3d at 1312 ("However, to show

reliance on Aspex's silence and inaction, Clariti need not prove precisely what alternative paths it would have taken, or that every marketing decision was based on reliance on Aspex's silence."). Whether inside or outside the licensing arrangements, Sprint systemically worked to build a network while High Point's predecessors continued to sell to Sprint equipment and negotiate the interoperability that High Point would come to allege constituted unlicensed infringing activity.

Finally, the district court did not err in finding that Defendants suffered prejudice from the delay. There is no dispute that Sprint—as early as 1996—worked to build a CDMA network at significant cost, totaling billions of dollars. *Radio Sys. Corp.*, 709 F.3d at 1130 (affirming a district court's findings of prejudice where the accused infringer "relied on this silence by significantly expanding its product line"). The district court did not err in finding evidentiary prejudice because the unrebutted evidence demonstrated that information about the inventor, which could have been used for a variety of defense theories, was fading or is already absent. High Point failed to present evidence to rebut the economic and evidentiary prejudice showing made by Defendants.

## CONCLUSION

The district court did not abuse its discretion in granting summary judgment that High Point is equitably estopped from prosecuting this lawsuit against Defendants. We *affirm* the judgment below.

## AFFIRMED

## COSTS

Each party shall bear its own costs.